No. 105,182

STATE OF KANSAS, *Appellant*, v. JAMES L. SIMPSON, *Appellee*.

(327 P.3d 460)

Opinion filed June 27, 2014.

*Michael R. Serra*, deputy county attorney, argued the cause, and *Caleb Stegall*, county attorney, *Joshua A. Ney*, assistant county attorney, and *Steve Six*, attorney general, were with him on the briefs for appellant.

*John R. Kurth*, of Kurth Law Office Incorporated, P.A., of Atchison, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

*Per Curiam*: After the State charged James L. Simpson with aggravated indecent liberties with a child and aggravated child endangerment, Simpson requested a psychiatric evaluation of the complaining child witness. Although the district court ordered the evaluation, the child's mother refused to give the necessary consent, so Simpson filed a motion in limine seeking to suppress the child's testimony and statements. The district court granted Simpson's motion, and the State filed an interlocutory appeal. After analyzing potential legal justifications for suppression and concluding none supported the district court's ruling, the Court of Appeals panel reversed the district court's suppression order. *State v. Simpson*, No. 105,182, 2011 WL 4563106 (Kan. App. 2011) (unpublished opinion). We granted Simpson's petition for review.

Because we conclude the State's narrow argument to the Court of Appeals fails, we reverse the Court of Appeals' decision, affirm the district court's ruling, and remand for further proceedings.

## Factual Background

Our resolution of this case requires only a brief factual recitation. The State charged 43-year-old James Simpson with aggravated indecent liberties with a child and child endangerment after 13-year-old K.S. told law enforcement Simpson touched her chest and vagina with his hand. Law enforcement also was given a note from K.S. to Simpson wherein K.S. wrote: "I'm mad at you but I stell Love you can stell do it with me" and "ps I (drawn heart) U baby boy."

Following a preliminary hearing at which K.S. testified, Simpson filed a motion seeking a psychiatric evaluation of K.S. Citing *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), Simpson argued the State's case hinged on K.S.'s credibility and because K.S. had "conveyed several extremely divergent accounts" of the contacts between her and Simpson, a psychiatric evaluation was appropriate. Simpson also suggested that K.S. suffered from a "mental disease or defect" based on K.S.'s intelligence quotient (IQ), which was in the .1 percentile for her age group. Finally, Simpson contended K.S. had a motive to lie "based upon her sister's conduct in a pending Douglas County case against her father."

The State urged the district court to reject Simpson's request for a *Gregg* evaluation, asserting K.S.'s low IQ demonstrated neither an inability to tell the truth nor a "mental instability." The State also argued that K.S. had consistently described Simpson's conduct and that an eyewitness corroborated Simpson's inappropriate conduct with K.S.

Ultimately, the district court granted Simpson's motion and ordered K.S. to submit to a psychiatric evaluation. In support, the court cited K.S.'s age and low cognitive abilities.

Approximately 1 month later, the parties informed the district court that G.I.S., K.S.'s mother, refused to consent to K.S.'s evaluation, believing it was not in K.S.'s best interest. Protracted proceedings followed, during which the district court considered but declined to decide whether it could order G.I.S. to consent to K.S.'s evaluation. At one point, the court warned the State that if G.I.S. maintained her refusal to consent, the court would suppress

K.S.'s testimony and any discussion of her statements. The State protested, asserting that suppression was not an appropriate remedy because K.S. was a competent witness.

Eventually, approximately 3 months after the district court granted Simpson's motion for a psychological evaluation, Simpson filed a motion in limine seeking to suppress K.S.'s statements and testimony based on her failure to undergo a *Gregg* evaluation. In support, Simpson cited K.S.A. 60-408, which gives the district court discretion to determine a witness' qualifications to testify, and briefly mentioned a case discussing the Confrontation Clause.

The district court granted Simpson's motion in limine. The State then filed an interlocutory appeal, asserting the district court erred in granting the motion in limine because K.S. was a competent witness and qualified to testify.

In an unpublished decision, the Court of Appeals reversed the district court's decision suppressing K.S.'s statements and testimony, and in doing so the panel considered and rejected several possible justifications for the decision. Initially, the panel determined the rules of evidence did not permit the suppression because an individual is qualified to be a witness as long as he or she is capable of expression and can understand the duty to tell the truth, *i.e.*, the person is competent. Because the district court did not find K.S. incompetent, the panel rejected this rationale. *Simpson*, 2011 WL 4563106, at *5-6. The panel further declined to find that the district court suppressed K.S.'s testimony as a sanction, concluding sanctions were inappropriate because no party had violated a court order. 2011 WL 4563106, at *7. Next, the panel concluded the district court's decision could not be upheld as a ruling on a limine motion because suppression based on a motion in limine is appropriate only when the evidence is inadmissible, and the panel found no legal basis for finding K.S.'s statements and testimony inadmissible. 2011 WL 4563106, at *10-11. Finally, the panel rejected Simpson's constitutional arguments, finding Simpson failed to demonstrate that his fundamental right to present his theory of defense would be implicated if he were forced to proceed to trial without the *Gregg* evaluation. 2011 WL 4563106, at *11-12. Finding no basis upon which to affirm the district court's de-

cision, the panel reversed the suppression ruling and remanded for further proceedings.

We granted Simpson's petition for review, obtaining jurisdiction under K.S.A. 60-2101(b).

## ANALYSIS

The State's interlocutory appeal presented the Court of Appeals with "[t]he narrow issue" of whether the trial court abused its discretion "when it deemed the witness to be incompetent and suppressed the testimony of that witness" even though "the Defendant introduced no evidence that tended to establish one of the two alternative standards for witness incompetency pursuant to K.S.A. 60-417." Despite the singular issue framed by the State, the Court of Appeals considered multiple alternative bases for the trial court's ruling, ultimately rejecting them all.

But unlike the panel, we choose to confine our review to the narrow issue framed by the State. And while that issue may be intriguing, it does not fit either the facts of this case or the ruling of the district court.

More specifically, the record does not support the State's contention that the district court based its ruling solely on a determination that K.S. was incompetent to testify. While the State repeatedly urged the district court to conduct a hearing to determine K.S.'s competency, the court failed to focus on any particular concern in its orders related to the motion to compel or during any of the proceedings generated by the motion. For instance, in the journal entry formalizing the court's limine order, the district court indicated it based its ruling on "the previous rulings and Orders of the court" and "the non party [sic], natural mother's, failure to consent to the evaluation of the alleged victim and consequential failure to comply with the previously ordered evaluation/examination." This language seems to suggest, as Simpson contends, that the court suppressed K.S.'s testimony as a sanction for her mother's refusal to comply with the evaluation order.

Further, at an earlier hearing on a motion to compel, the district court intimated a due process concern, opining that the defendant should "have the opportunity to have access to [the evaluation re-

sults] for whatever legitimate use they may be as a matter [of] law in his defense." Thus, while the basis for the district court's ruling is less than clear, it is clear that the court's concerns about the victim's competency were not the sole reason for the court's decision to suppress K.S.'s testimony.

The State, as the appellant in this case, bears the burden of compiling a record sufficient to support its arguments. See *Nold v. Binyon*, 272 Kan. 87, 96, 31 P.3d 274 (2001). If the district court's findings were inadequate for an appellate court to review the State's argument on appeal, the State must shoulder part of the blame and suffer the consequences. *Cf. State v. Seward*, 289 Kan. 715, 720, 217 P.3d 443 (2009) (district court and appellant share responsibility for inadequate findings; a litigant who fails to object to inadequate Rule 165 findings is foreclosed from making appellate argument that depends on what is missing).

Although ultimately unsuccessful, we will respect the State's strategic decision to narrowly frame its issue. Because the State asked the Court of Appeals only to review whether the district court abused its discretion in making a competency determination, we must find the record and the district court's rulings inadequate to answer this question.

Accordingly, we reverse the Court of Appeals, affirm the district court's decision, and remand for further proceedings.

\* \* \*

ROSEN, J., concurring: I concur with the majority opinion. I write separately to emphasize my belief that the district court was empowered to take the measures employed here to ensure that a valid, enforceable court order was complied with.

While the dissent raises some compelling concerns regarding the continued validity of *Gregg* evaluations, that question is not before us. See *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979). As the law currently stands, Simpson followed the proper procedure by filing a motion requesting a psychological evaluation of the complaining witness resulting in the district court holding a hearing on that motion. Following the hearing in which both sides had an

opportunity to be heard, the court granted the motion and ordered K.S. to undergo a psychological evaluation.

It is simply not up to the State, a witness, or other party to the case to protest the order by disregarding it. Given the posture of the case at that point, it is then up to the State if it wishes to proceed in a prosecution without witnesses who choose to snub court orders. Certainly the State cannot be complicit with those who defy the very laws prosecutors are sworn to uphold. To find otherwise completely neuters a district court's power to enforce the law and protections guaranteed to our participants in the administration of justice.

\* \* \*

MORITZ, J., dissenting: Because the majority's summary and convenient dismissal of the substance of the State's brief and argument is disappointing and unjustified, I must, respectfully, dissent. The State, in my view, adequately attempted to clarify and pin down the district court's imprecise and incomplete ruling and should not be penalized for the district court's failure to provide a legal basis for its decision. I would find the district court's failure to provide a reasoned legal basis for its decision to prevent K.S. from testifying an abuse of discretion.

Alternatively, the core of this case is a unique question explored by few courts—this one not among them—namely, what remedies are available to a district court when a complaining witness refuses to submit to a psychological evaluation. This was the pointed question the Court of Appeals attempted to answer and, more importantly, the issue squarely presented by the petition for review this court accepted. I would answer this question, although admittedly in an unexpected manner.

*The trial court abused its discretion by failing to provide a legal basis for its ruling and disqualifying K.S. from testifying.*

The majority suggests the State must shoulder the blame for the district court's failure to specify a singular reason for its decision and for the State's decision to characterize that failure as a finding that K.S. was incompetent to testify. Yet the record demonstrates

the State consistently and adamantly characterized Simpson's efforts to prevent the witness from testifying as a disqualification issue and repeatedly urged the district court to conduct a hearing on her competency as required by statute. The district court's failure to focus on the State's argument or to provide any clear basis for its ruling should not fall upon the State.

Instead, I would hold that the district court clearly abused its discretion by failing to identify or isolate any legal basis for its harsh ruling despite the State's efforts to provide the court with a framework for doing so. See *State v. Hernandez*, 294 Kan. 200, 207, 273 P.3d 774 (2012) (holding trial court abused its discretion when it denied a motion for mistrial after erroneously concluding an issue could be dealt with at sentencing); *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011) (holding a court abuses its discretion when it commits an error of law).

Further, the State's argument regarding the district court's failure to conduct a hearing on K.S.'s competency has strong merit. The argument is solidly founded on K.S.A. 60-407, which abolished all common-law bases for witness disqualification and dictates that "every person" qualifies as a witness. See K.S.A. 60-407; see also Comment to Rule 7, 1953 U.R.E., *reprinted in* 4 Vernon Kansas Statutes Annot. 199 (1965) (stating the disqualification rule was intended to "wipe[] the slate clear of all disqualifications of witnesses" excepting those provided in statute). Significantly, K.S.A. 60-417 provides a limited exception to this broad rule of witness qualification—an exception that applies only when the witness is incompetent. K.S.A. 60-417 (providing a witness is "disqualified" when he or she is incapable of expressing himself or herself in an understandable fashion or when the witness is incapable of understanding the duty to tell the truth).

And, as the State points out, in order for this exception to apply, the court must conduct a hearing as to the witness' competency. See K.S.A. 60-408 (providing "the disqualification of a person to be a witness" is a matter for the judge); *State v. Gilliland*, 294 Kan. 519, 548, 276 P.3d 165 (2012) (holding trial court could determine whether suggestive interrogation made witness incapable of telling the truth as part of a competency hearing); *State v. Poulos*, 196

Kan. 253, 264, 411 P.2d 694 (1966) (noting that a person is incompetent to testify only if one of the two circumstances listed in K.S.A. 60-417 is met).

Here, in light of the State's numerous and consistent requests that the district court conduct a competency hearing before disqualifying the witness, the State understandably and appropriately interpreted the district court's suppression order as an implied finding that K.S. was incompetent to testify. I would not offhandedly reject the State's sound argument, nor would I fault the State for attempting to make sense of the district court's less than clear rulings.

Notably, the practical result of the majority's decision to dispense with this issue on procedural grounds and to ignore the basis upon which it granted review is that the district court's order suppressing the victim's testimony will remain in place and the State likely will be forced to dismiss the case. This result is unacceptable—given the district court's failure to consider K.S.'s competency or to cite any legal basis for its suppression order—and unconscionable in light of the facts. Namely, 43-year-old Simpson admitted he had "romantic feelings" for 13-year-old K.S. and that while he "hugged" other kids, he "hugged" K.S. differently—in an "emotional bonded sort of way." Simpson also admitted he allowed K.S. to sleep with him in his bed one night, and he conceded he could have touched her breast and vagina. An eyewitness testified at the preliminary hearing that she observed Simpson and K.S. "acting like man and wife," and she explained that this meant she observed Simpson and K.S. kiss, Simpson fondle K.S.'s breasts, and Simpson "go between [K.S.'s] legs and play."

State v. Gregg *is unsound and should be overturned.*

Continuing to the question at hand, any discussion of the remedies available to a district court when a complaining witness refuses to consent to an evaluation must begin with a discussion of our caselaw giving rise to such an evaluation, *State v. Gregg,* 226 Kan. 481, 602 P.2d 85 (1979). In *Gregg,* this court determined a trial court possesses the "inherent" authority to order a psychological evaluation of the complaining witness in a sexual abuse case.

In so holding, the *Gregg* court predominately relied on a single case, *Ballard v. Superior Court*, 64 Cal. 2d 159, 49 Cal. Rptr. 302, 410 P.2d 838 (1966), *superseded by statute as noted in People v. Haskett*, 30 Cal. 3d 841, 180 Cal. Rptr. 640, 640 P.2d 776 (1982). *Ballard*, in turn, relied on authority which is no longer sound. In *Gregg*, this court quoted *Ballard's* flawed rationale without appearing to understand its implications:

"In urging psychiatric interviews of complaining witnesses in sex cases, some prominent psychiatrists have explained that a woman or a girl may falsely accuse a person of a sex crime as a result of a mental condition that transforms into fantasy a wishful biological urge. Such a charge may likewise flow from an aggressive tendency directed to the person accused or from a childish desire for notoriety. [Citations omitted.] . . . Professor Wigmore, in a widely quoted passage, stated, 'No judge should ever let a sex offense charge to the jury unless the female complainant's social history and mental makeup have been examined and testified to by a qualified physician.'

"This concern is stimulated by the possibility that a believable complaining witness, who suffers from an emotional condition inducing her belief that she was subjected to a sexual offense, may charge some male with that offense. Thus, the testimony of a sympathy-arousing child may lead to the conviction of an unattractive defendant, subjecting him to a lengthy prison term." *Gregg*, 226 Kan. at 487-88 (quoting *Ballard*, 64 Cal. 2d at 172).

Put simply, the basis for this court's decision in *Gregg* is unsound, based not on statute or the Constitution but on misogynistic and outdated notions.

Moreover, setting aside my concerns about *Gregg's* reliance on a decision suggesting that women's accusations of sexual crimes stem from "a mental condition that transforms into fantasy a wishful biological urge," I question the necessity and value of a *Gregg* evaluation, especially when the value of the evaluation to the defendant is weighed against privacy interests of the complaining witness. Notably, in issuing an order for a *Gregg* evaluation, courts consider: whether there is evidence corroborating the victim's allegations, whether the victim demonstrates a lack of veracity, whether the victim responds unusually when asked what it means to tell the truth, whether the victim made similar false accusations in the past, and whether the victim demonstrates mental instability. See *State v. Price*, 275 Kan. 78, 84, 61 P.3d 676 (2003). Signifi-

cantly, each of these factors can be challenged by the defendant without a court-ordered mental evaluation and are factors considered by the jury when it evaluates the witness' testimony.

Further, even if the defendant did not already have other means to test the complaining witness' veracity, I question whether a *Gregg* evaluation would be admissible even if ordered and performed. Kansas law forbids an expert from directly commenting on a witness' credibility and any expert would be limited to speaking generally, something the expert likely could not do without invading the privacy of the complaining witness. See *State v. Wells*, 289 Kan. 1219, 1235-36, 221 P.3d 561 (2009).

And *Gregg* presents additional insurmountable hurdles. The State could not appeal the district court's order granting the *Gregg* evaluation in this case, at least not until it played out in a tortuous course resulting in suppression of the complaining witness' testimony. Yet the basis for the court's order was weak, if not nonexistent. *Gregg* evaluations purportedly are necessary to permit a defendant to question the complaining witness' veracity, but the two reasons the district court cited for the evaluation—K.S.'s age, which was 14 at the time, and her intelligence quotient (IQ), which was at the low end of her age group—appear to have nothing to do with her veracity. Significantly, Simpson never argued K.S.'s low IQ inherently made her untruthful; in fact Simpson's attorney acknowledged he was not alleging "mental instability." Thus, the State was left with an erroneous but unappealable order.

Further, the order granting the evaluation essentially was directed at a nonparty, the minor victim's mother, but the State was made to pay for the mother's noncompliance. Unlike Justice Rosen in his concurrence, I refuse to shame K.S.'s mother for "snubbing" the court's order. Indeed she may well have been exercising constitutionally protected interests.

Finally, I find it telling that this court has steadfastly refused to extend *Gregg's* application beyond the complaining witness in sex crime cases. See, *e.g.*, *State v. Cook*, 281 Kan. 961, 986, 135 P.3d 1147 (2006); *State v. Jones*, 267 Kan. 627, 984 P.2d 132 (1999). But, other than *Ballard's* perverse reasoning, I can think of no reason this court would permit the district court to order an intru-

sive psychological evaluation in a sexual abuse case but not in any other case.

*Gregg* should not be the law of this State, and I would overturn it. Doing so functionally removes the need for K.S. to submit to the evaluation and would require reversal of the district court's order suppressing her testimony.

In sum, I would affirm the Court of Appeals' reversal of the district court's order because the district court abused its discretion by disqualifying K.S. from testifying and failing to provide a sound legal basis for its ruling. Or, in the alternative, I would find *Gregg* is no longer sound law and should be overturned.