No. 102,883

STATE OF KANSAS, *Appellee*, v. JOHNATHAN DAVID MCCUNE, *Appellant*.

(330 P.3d 1107)

Opinion filed July 18, 2014.

*Michael J. Bartee*, of Michael J. Bartee, P.A., of Olathe, argued the cause and was on the briefs for appellant, and *Johnathan D. McCune* was on a supplemental brief pro se.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

MORITZ, J.: After a jury convicted Johnathan McCune of two counts of rape of a child under 14, the district court sentenced him in accordance with Jessica's Law, K.S.A. 21-4643, to two consec-

utive life sentences with no possibility of parole for 1,098 months. McCune appeals, alleging the district court erroneously admitted evidence, placed an unconstitutional condition on his defense, and abused its discretion by refusing to order a psychiatric evaluation of the complaining witness. He further asserts his sentence is void because K.S.A. 21-4643 is unconstitutionally vague. McCune also submitted a pro se brief asserting the prosecutor committed misconduct in his closing argument, the district court should have struck a detective's testimony that he "believed" the victim, and the district court erroneously imposed lifetime postrelease supervision.

Finding no trial errors, we affirm McCune's convictions. We vacate the district court's imposition of lifetime postrelease supervision but affirm the remainder of McCune's sentence.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2007, 13-year-old A.R. reported to her mother, Latricia, that her 23-year-old stepfather Johnathan McCune "touched [her] inappropriately." A.R. later confided McCune vaginally raped her twice while the family lived in Lenexa and physically and sexually abused her for several years, predominately while the family lived in Missouri.

The State charged McCune with two counts of rape of a child under 14. See K.S.A. 21-3502(a)(2).

*Pretrial motions*

*State's motion to admit K.S.A. 60-455 evidence*

Before trial, the State filed a motion seeking to admit evidence under K.S.A. 60-455 that McCune raped, physically abused, and threatened A.R. while the family lived in Missouri and that McCune pled guilty to two charges arising from this abuse, statutory rape and child abuse, in Johnson County, Missouri. The State also sought to admit evidence McCune physically abused A.R.'s mother and older brother, A.C. The State alleged this evidence was relevant to establish a relationship or continuing course of conduct between the parties or to corroborate the complaining witness' tes-

timony. At a later hearing on the motion, the State further asserted the evidence also was probative of identity and plan.

McCune argued evidence of his prior misconduct could not be admitted to prove identity because that fact was not at issue, nor could it be admitted to prove plan because there was no direct relationship between McCune's misconduct in Missouri and the Kansas charges.

Although it found the evidence of McCune's prior convictions more prejudicial than probative, the district court ultimately found the remaining evidence admissible. The district court rejected the State's assertion that the evidence was relevant to prove identity but admitted the evidence for its bearing on A.R. and McCune's relationship and A.R.'s reason for delaying reporting the abuse, McCune's plan, and McCune's ongoing course of conduct.

*Defense motion for a psychiatric evaluation of A.R.*

Prior to trial, McCune moved for a psychiatric evaluation of A.R. pursuant to *State v. Gregg*, 226 Kan. 481, Syl. ¶ 3, 602 P.2d 85 (1979). In support of the motion, McCune alleged: (1) The Kansas Department of Social and Rehabilitation Services (SRS) had previously investigated an accusation by A.R. that her grandmother's boyfriend sexually abused her, but no charges were filed; (2) no evidence corroborated A.R.'s allegations against McCune; (3) a lengthy time period occurred between the alleged abuse and A.R.'s disclosure; and (4) the motion was not a fishing expedition.

The State urged the district court to deny McCune's motion, pointing out that McCune's guilty plea corroborated A.R.'s allegations and that A.R.'s allegations against her grandmother's boyfriend were never proven false, just never substantiated. The State also disputed that A.R.'s delay in reporting McCune's abuse bore on her veracity.

The district court denied McCune's motion, finding no evidence that A.R. had a mental instability or that she could not understand what it meant to tell the truth. Further, the district court found no evidence that A.R. previously falsely reported similar allegations.

*The State's case-in-chief*

*Testimony from A.R. and Latricia*

A.R. met McCune in 2004 when her older sister Kaylee invited him to Thanksgiving dinner. At some point McCune and A.R.'s mother, Latricia—who was "quite a bit" older than McCune—became romantically involved, and the couple married in February 2005 when A.R. was 9 years old. McCune, A.R., Latricia, and A.R.'s then 12-year-old brother (A.C.), lived in Warrensburg, Missouri.

After Latricia and McCune were married, McCune went from being a "nice part of the family" to treating A.R., A.C., and Latricia like "servants," spanking A.R. with his belt when she did not follow his directives and regularly beating Latricia.

In May 2005, A.R. attempted to intervene as McCune beat Latricia. But McCune hit A.R. in the head with his fist, and a friend of McCune's, who was in the home at the time, took A.R. to another room in the house. A.R. could still hear furniture being broken and Latricia screaming and crying; A.R. tried to get out of the house through the kitchen, but McCune thwarted her effort. A.R. then opened her bedroom window, climbed out, and ran through a pasture and across a creek to a neighbor's house. The neighbor called police, who arrested McCune.

About 1 month later, McCune again began living with the family. Approximately a week after McCune moved back in, he approached A.R. at a time when her mother and brother were not at home. He grabbed her by the hair as she watched television, dragged her to her bedroom, threw her on her bed, and began to undo his pants. A.R. escaped briefly, but McCune caught her and vaginally raped her with his penis. As he did so, McCune told A.R. she would "pay for what [she] did." A.R. assumed McCune meant he was retaliating against her for calling the police.

A.R. testified the intercourse lasted 5 to 10 minutes and afterward there was "white stuff all over" and blood running down her legs. McCune put A.R. in the bathtub and told her to wash up. When Latricia returned home, A.R. did not tell her about McCune's actions because McCune threatened to kill A.R. and her brother if she did.

A.R. further testified McCune raped her "maybe [five] times" during the year the family lived in Warrensburg and that during those incidents McCune penetrated her vagina with his penis and sometimes forced A.R. to perform fellatio on him. McCune also continued to hit A.R., A.C., and Latricia. A.R. testified she did not tell anyone about the abuse because she "really thought [McCune] was going to kill [her, her mother, and brother]."

In the fall of 2006, shortly before A.R. turned 10 years old, the family moved to Warsaw, Missouri, where the abuse escalated. A.R. testified McCune continued to beat her, including burning her with cigarettes. McCune also continued beating Latricia, but A.C. bore the brunt of McCune's physical abuse. According to A.R., McCune also continued the sexual abuse in Warsaw, raping A.R. once a week and then every other week.

One evening in November 2006, as Latricia and A.R. bathed the family dog, McCune returned home from an outing. Latricia asked McCune, who smelled of alcohol, where he had been and McCune responded by yelling at her and shoving the dog's nose under water. A.R. pushed McCune out of the way, allowing the dog to emerge. But McCune hit A.R. over the head with his fist and then hit and choked Latricia, slamming her head against a wall. Latricia testified the beating lasted "hours and hours." A.R. and A.C. tried to intervene, but McCune hit them as well, breaking A.C.'s nose. McCune also tried to force A.C. to cut A.R. with a utility knife.

Eventually A.R. and A.C. managed to run to a neighbor for help. The neighbor refused to contact law enforcement and instead called A.R.'s older sister Kaylee who lived in Lenexa with her boyfriend, Miguel. Kaylee and Miguel picked up A.R., A.C., and Latricia and drove them to the police station to report the incident. A.R., A.C., and Latricia then moved to Lenexa to live with Kaylee and Miguel.

Sometime later A.R., A.C., and Latricia moved to Centerview, Missouri. The family eventually moved back to Lenexa, where McCune moved back in and resumed his physical abuse.

A.R. testified McCune twice raped her in Lenexa between March and July 2007. According to A.R., the first rape began as she sat on the living room couch, and during that rape, McCune

burned A.R. with his cigarette. During the second rape, A.R. was sitting on her bed when McCune came in and hit her in the head. A.R. "gave in" and "just lay there." A.R. testified she "guess[ed] he wasn't satisfied" because McCune choked her until she blacked out. When A.R. woke up, McCune was burning her with his cigarette and then shoved a pillow over her face. McCune again put his penis in A.R.'s vagina.

A few days after the second rape, A.R. ran to a nearby convenience store and asked the cashier to call the police. According to A.R., she showed officers bruising from McCune's abuse, but then Latricia arrived and told the police A.R. "was crazy." Latricia said she thought A.R. was "acting strange" and told the police A.R. was out of control and they released A.R. to her.

The family and McCune left Lenexa and moved several times before eventually settling in Kansas City, Missouri. A.R. testified that in December 2007 as she sat in the living room watching a movie, McCune sat beside her, put his hand down her pants, and touched her "private spot." A.R. decided she "couldn't handle it" and told her mother McCune "had touched [her] inappropriately." When Latricia asked McCune about the touching, he beat Latricia, burned her with cigarettes, and yelled, " 'She says I raped her? She says I'm [sic] molested her? She said I did this?' " A.R. called the police, and A.R., A.C., and Latricia went to Safe Haven, a domestic violence shelter.

Prior to concluding A.R.'s direct examination, the prosecutor asked A.R. whether any other man had touched her inappropriately, and A.R. responded that her grandmother's boyfriend had touched her over her clothes when she was 4 or 5 years old.

*Defense's cross-examination of A.R.*

McCune's counsel attempted to establish that A.R. did not like McCune because he disciplined her harshly. And A.R. admitted when she previously reported that someone hurt her, including her grandmother's boyfriend and Kaylee, the person was removed from her life.

McCune also questioned A.R. about her delay in disclosing the abuse and the fact that she talked to multiple people—including law enforcement and physicians—without reporting the abuse.

Finally, McCune impeached A.R.'s memory, pointing out inconsistencies between A.R.'s version of events as relayed at the forensic interview, the preliminary hearing, and trial. During cross-examination, A.R. admitted, "It's hard to remember everything exactly the way it happened" and that she "switched around" the rapes in Lenexa.

*Testimony about interviews with A.R. and her physical examination*

An employee of Missouri's Department of Social Services, Children's Division, testified she interviewed A.R. at Safe Haven, but after A.R. disclosed McCune had put his fingers in her vagina and made her fondle him, she ended the interview and assisted in arranging a forensic interview.

Jill Hazel conducted the forensic interview with A.R. Hazel testified children often provide more detail during a forensic interview than in prior interviews. Hazel also explained that when a child is repeatedly abused the child often cannot remember the details of each separate incident.

Regarding the first rape, which occurred in Warrensburg, Missouri, A.R. told Hazel that McCune came into her room, grabbed her hair, pushed her onto her bed, ripped her clothes off, and raped her. A.R. told Hazel that McCune raped her four or five times in Warrensburg.

A.R. advised Hazel that McCune also raped her when the family lived in Warsaw, Missouri, sometimes when her mother was home. The last time McCune raped her in Warsaw, he burned her with a cigarette. A.R. also said McCune digitally penetrated her while the family lived in Warsaw.

A.R. told Hazel the first rape in Lenexa occurred in the home's office and was shorter than the others, lasting only about 5 minutes. The second rape occurred in the living room and during that rape McCune burned her upper thigh with a cigarette.

Hazel testified A.R. denied that McCune said anything to her while raping her and A.R. never mentioned him threatening her.

The jury watched a video of Hazel's 2-hour interview with A.R., but the video does not appear in the record.

The State also called Dr. Mary Moffat, who testified she examined A.R. and observed a full hymenal transaction consistent with blunt force trauma. She also observed thinning of A.R.'s hymenal cuff. Dr. Moffat conceded that she could not conclusively testify regarding the cause of the thinning, but she often sees such thinning in patients complaining of sexual abuse. Moffat also observed a number of flat, white lesions consistent with cigarette burns on A.R.'s lower back and right hip, thigh, and leg. Finally, Dr. Moffat testified her findings were consistent with A.R.'s disclosures in the forensic interview.

*Testimony about law enforcement interview with McCune*

Detective James Rader of the Lenexa Police Department testified he interviewed McCune while McCune was in custody in Warrensburg, Missouri. McCune admitted physically abusing Latricia and her family, including intentionally burning A.R. with cigarettes.

But McCune denied sexually abusing A.R., asserting Latricia concocted the allegations as a means of retaliating against him. Before Rader told McCune the specifics of A.R.'s allegations, McCune volunteered that he "bet" A.R. had alleged McCune raped her without a condom. When Rader told McCune there was physical evidence of rape, he responded, "[N]umerous people would have had access" and could have done it or "maybe her mother rammed something into her."

*Defense's case-in-chief*

The principal of the school A.R. attended when she lived in Lenexa testified for the defense that A.R. withdrew from school on March 1, 2007, before the alleged Lenexa rapes.

McCune also admitted a copy of the lease agreement for the apartment where A.R. and her family ostensibly stayed with McCune. The lease showed the primary leaseholder, Kaylee, added her newborn son to the lease as an occupant in March 2007 but did not add A.R., McCune, or Latricia.

The jury convicted McCune of both rape counts with which he was charged.

*Sentencing*

McCune filed a motion arguing the sentence required under Jessica's Law constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and § 9 of the Kansas Constitution Bill of Rights. At the sentencing hearing, the district court rejected McCune's argument.

McCune also asserted that Jessica's Law is unconstitutionally vague because the statute fails to explain the manner in which a second count should be sentenced. As evidence, he noted the presentence investigator filed three different presentence investigation (PSI) reports, each recommending a different sentence. The district court rejected McCune's argument, concluding Jessica's Law is complex but not vague.

The district court sentenced McCune to two consecutive life sentences under Jessica's Law. Further, because McCune had a prior rape conviction and a criminal history score of B, the court applied K.S.A. 21-4643(b). That provision requires an offender serve "not less than 40 years" when the offender has a prior conviction enumerated in the statute, rape being among them, and further serve a mandatory minimum sentence equivalent to the grid sentence when, because of the offender's criminal history score, such term exceeds 480 months. Accordingly, the district court sentenced McCune to a mandatory minimum term of 618 months—a term equal to the high grid-box number for his criminal history score and a severity level 1 rape, and a mandatory minimum term of 480 months for his second rape count because of his prior rape conviction. The district court ran the sentence consecutive to McCune's 13-year Missouri sentence.

McCune directly appealed his conviction and sentence. Our jurisdiction arises under K.S.A. 22-3601(b)(1).

## ANALYSIS

*The district court did not err in admitting evidence of McCune's prior misconduct under K.S.A. 60-455.*

The district court permitted the State to present a range of evidence falling under the confines of K.S.A. 60-455, including: (1) evidence McCune sexually abused A.R. in Missouri; (2) evidence

McCune physically abused A.R.; and (3) evidence McCune physically abused Latricia and A.C. The district court admitted the evidence for its bearing on A.R. and McCune's relationship; A.R.'s reason for not promptly reporting the sexual abuse; McCune's plan; and McCune's ongoing course of conduct.

McCune argues the district court's admission of this evidence violated K.S.A. 60-455 because despite the court's identification of the evidence as relevant to specific material facts, it ultimately admitted the evidence only for its bearing on A.R.'s credibility and as propensity evidence.

The State acknowledges the district court's ruling identified A.R.'s credibility as a pivotal issue but argues the discussion merely demonstrated the materiality of the history of A.R. and McCune's relationship.

The State also argues because the 2009 amendment expanding K.S.A. 60-455 was in effect by the time of McCune's trial, evidence of McCune's prior misconduct was admissible for its bearing on "any matter to which it is relevant and probative" and not just material facts. See K.S.A. 2013 Supp. 60-455(d) (providing evidence of sexual misconduct in cases involving sexual offense can be admitted for "any matter to which it is relevant and probative"); *State v. Prine*, 297 Kan. 460, 475-79, 303 P.3d 662 (2013) (*Prine II*) (explaining that language added by 2009 legislature to K.S.A. 60-455 allows admission of prior sexual misconduct as propensity evidence).

### Preliminary arguments

Preliminarily, McCune argues we need not consider whether the district court properly admitted the evidence for the material facts the district court instructed on because the district court's comments demonstrated that it impermissibly admitted evidence of McCune's prior misconduct only to prove A.R.'s credibility and to support an inference that McCune raped A.R. in Lenexa, *i.e.*, propensity evidence.

But we disagree with McCune's reading of the record. At several points in the trial, the district court noted that it admitted the evidence for the specific material facts discussed and dutifully in-

structed on those same material facts. Read holistically, the district court's discussion regarding A.R.'s credibility merely explained how the evidence was relevant to something other than McCune's propensity to commit the same acts in Lenexa.

We also reject the State's suggestion that we consider the admissibility of the evidence under the 2009 amendments to K.S.A. 60-455(d). Initially, the State overlooks that K.S.A. 60-455(d) only applies to evidence of prior *sexual* misconduct. Thus, even if the amended version of K.S.A. 60-455 applied, the expansive provision upon which the State relies would apply only to some of the evidence at issue here. More critically, the State fails to acknowledge that apparently neither party was aware of the 2009 amendments or their application at the time of trial, and the district court admitted the evidence to prove specific material facts. In considering whether the district court erred, we will review the actual ruling issued by the district court, not the ruling that it could have issued. See *Prine*, 297 Kan. at 479 (refusing to consider K.S.A. 2013 Supp. 60-455[d] in deciding whether trial court erred in admitting evidence under prior version of statute despite the applicability of amended statute at time of trial).

### Discussion

The State alleged evidence McCune previously sexually and physically abused A.R. and physically abused her family was admissible under K.S.A. 60-455's provision allowing admission of prior "crimes or civil wrongs" when the evidence is not used "as the basis for an inference that the person" committed the charged conduct, but rather to "prove some other material fact including, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

A district court admits K.S.A. 60-455 evidence using a multistep process. It first determines whether the evidence is relevant to prove a material fact, including deciding whether the proffered material fact is actually in dispute. See *State v. Reid*, 286 Kan. 494, 503, 186 P.3d 713 (2008). The material facts listed in K.S.A. 60-455 are exemplary rather than exhaustive, and a party can seek to admit evidence to prove a material fact not specifically enumer-

ated. See *State v. Gunby*, 282 Kan. 39, 52-53, 144 P.3d 647 (2006). Evidence is relevant to a material fact when it is both material and probative. See K.S.A. 60-401(b); *State v. Preston*, 294 Kan. 27, 32, 272 P.3d 1275 (2012). We review these conclusions de novo. 294 Kan. at 32.

The district court next considers whether the probative value of the evidence outweighs its potentially prejudicial effect. We review this conclusion for abuse of discretion. 294 Kan. at 32.

*Statutory material facts*

Only one of the material facts contained in the district court's ruling is enumerated in K.S.A. 60-455—plan. Evidence can be admitted to prove plan either when the prior misconduct is so " 'strikingly similar' in pattern or so distinct in method of operation as to be a 'signature' " or when "there is some direct or causal connection between the earlier conduct and the crimes charged." See *State v . Prine*, 287 Kan. 713, 729-30, 200 P.3d 1 (2009) (*Prine I*).

Here, evidence that McCune physically abused A.R., A.C., and Latricia is clearly not "strikingly similar" to the charged conduct because McCune was charged with sexually abusing A.R. Further, McCune's previous sexual acts against A.R. were not so strikingly similar to the alleged rapes in Lenexa as to constitute a signature act. See *State v. Longstaff*, 296 Kan. 884, 894, 299 P.3d 268 (2013) (holding that for conduct to be strikingly similar, it must have " 'something more than the similarities common to nearly all sexual abuse cases' "). Nothing was signature about McCune's conduct. For instance, some of the rapes occurred while A.R. and McCune were alone but others occurred while Latricia was home. And, some of the rapes occurred in the family's common living space while others were in A.R.'s bedroom. While A.R. testified McCune physically abused her during the same period of time some of the rapes were committed, we cannot conclude that McCune consistently committed the same acts.

Relying on *State v. Blaurock*, 41 Kan. App. 2d 178, 201 P.3d 728, *rev. denied* 289 Kan. 1280 (2009), the State alternatively suggests the evidence was admissible to show a "direct or causal con-

nection between the earlier conduct and the crimes charged." In *Blaurock*, the Court of Appeals panel concluded the defendant had a "step-by-step" plan to break down his victim's resistance based on the defendant's isolation of his victim from family and friends, his development of a system of threats and rewards, and his gradual introduction of sodomy. 41 Kan. App. 2d at 202-03. But unlike in *Blaurock*, the evidence here demonstrates no "step-by-step" plan to break down A.R.'s resistance, nor did the State demonstrate that the abuse in Missouri somehow led to the abuse in Lenexa.

### *Nonstatutory material facts*

The district court also admitted the disputed evidence for purposes not enumerated in K.S.A. 60-455: to show an ongoing course of conduct and to explain the relationship of those involved and their motives, including why A.R. delayed in reporting McCune's sexual abuse.

We agree with the State that the district court appropriately admitted the evidence to show the relationship between McCune and A.R. and to explain A.R.'s delay in reporting the abuse. These reasons clearly were at issue at trial as both parties devoted considerable testimony and argument to discussing A.R.'s delay in disclosing the abuse. Much as K.S.A. 60-455 permits the State to use prior misconduct evidence to explain the defendant's opportunity to commit the crime or to show that an act was not accidental, the State here appropriately introduced the prior sexual and physical abuse of A.R. and her family to show that A.R.'s failure to disclose the Lenexa rapes arose from a legitimate fear McCune would injure or kill her or her family. Accordingly, the trial court did not err in admitting the evidence.

Based on this conclusion, we need not consider the State's alternative argument that the district court properly admitted the evidence to show McCune's ongoing course of conduct.

### *The district court did not place an unconstitutional condition on McCune's defense.*

At several points throughout trial, the district court advised McCune that if he attacked A.R.'s credibility as it related to the

events occurring in Missouri, then the court would find his prior Missouri convictions of statutory rape and child abuse admissible. McCune argues the district court's statement unconstitutionally hindered his defense by forcing him to sacrifice both his Sixth Amendment right to fully confront the witnesses against him and his right to present a defense in order to avoid the admission of his prior convictions.

The State counters that McCune failed to show "how he was prohibited from fully confronting" witnesses and further asserts the district court did not err because the State had a right to present the convictions as rebuttal evidence if McCune questioned A.R.'s credibility.

*Analysis*

The unconstitutional conditions doctrine originated in *Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). There, a defendant sought to suppress evidence of a robbery discovered in a suitcase in another individual's home because the search leading to the discovery violated the Fourth Amendment to the United States Constitution. At the time *Simmons* was decided in the trial court, the defendant could not establish standing unless he testified at the suppression hearing and admitted ownership of the suitcase. After Simmons did so, the trial court denied the motion to suppress, and at trial, the government admitted the defendant's earlier testimony connecting him to the crime and incriminating him.

On appeal, the Supreme Court explained that if the defendant's testimony at the motion hearing was admissible at trial, the defendant was forced to either "give up" a potentially valid Fourth Amendment challenge by not testifying or "waive" his Fifth Amendment constitutional right against self-incrimination by having the testimony admitted against him at trial. 390 U.S. at 393-94. The Court found it "intolerable that one constitutional right should have to be surrendered in order to assert another" and concluded the trial court erred in admitting the defendant's testimony. 390 U.S. at 394.

Thus, *Simmons* considered the tension between two constitutional rights and concluded a defendant cannot be forced to choose between those rights. In contrast, in this case McCune vaguely asserts the district court forced him to choose between having his prior convictions admitted under K.S.A. 60-455 or exercising his constitutional rights to confront witnesses and present a defense. But we previously have refused to extend *Simmons'* rationale when there is no tension between two constitutional rights. See *State v. Nguyen*, 285 Kan. 418, 428, 172 P.3d 1165 (2007) (rejecting claim of unconstitutional conditions where one right was statutory and one was constitutional); see also *MaGautha v. California*, 402 U.S. 183, 212-13, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971) (warning *Simmons'* reasoning should "be regarded as open to question" and not be given a "broad thrust"), *overruled on other grounds by Crampton v. Ohio*, 408 U.S. 941, 92 S. Ct. 2873, 33 L. Ed. 2d 765 (1972). Nothing convinces us to change that precedent here, and we reject McCune's suggestion that the trial court placed unconstitutional conditions on his defense.

*The district court did not abuse its discretion by refusing to order A.R. to undergo a psychiatric evaluation.*

McCune next asserts the district court abused its discretion by denying McCune's request for a psychiatric evaluation of A.R. pursuant to *State v. Gregg*, 226 Kan. 481, Syl. ¶ 3, 602 P.2d 85 (1979). The district court denied McCune's request, finding no evidence A.R. had a mental instability, she did not understand the difference between the truth and a lie, or she had previously falsely reported abuse.

*Standard of review and test*

We review a district court's decision whether to grant a psychiatric evaluation of a complaining witness for abuse of discretion. See *State v. Berriozabal*, 291 Kan. 568, Syl. ¶ 3, 243 P.3d 352 (2010); see also *State v. Rojas-Marceleno*, 295 Kan. 525, 530, 285 P.3d 361 (2012) (providing a district court abuses its discretion when the decision is unreasonable, based on an erroneous legal conclusion, or based on an error of fact).

A psychiatric evaluation of a complaining witness in a sexual abuse case is appropriate when the defendant can show the totality of the circumstances demonstrate compelling reasons for the evaluation. See *Berriozabal,* 291 Kan. 568, Syl. ¶ 4; but see *State v. Simpson,* 299 Kan. 990, 997-1000, 327 P.3d 460 (2014) (Moritz, J., dissenting) (suggesting need to reconsider and overrule *Gregg*). In determining whether compelling circumstances exist, a district court considers the following nonexhaustive list of factors:

"(1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth." *Berriozabal,* 291 Kan. 568, Syl. ¶ 5.

### Analysis

In support of his motion for a psychiatric evaluation, McCune asserted the State could produce no evidence to corroborate A.R.'s allegations, A.R. made prior unfounded allegations against her grandmother's boyfriend, and a lengthy delay occurred between the alleged abuse and A.R.'s full disclosure of the allegations.

On appeal, McCune primarily asserts the trial court lacked support for its conclusion that the charges were never proven false. But when the district court questioned whether the allegations "were unsubstantiated," McCune's counsel admitted she had no relevant records and "no idea what happened when SRS investigated." Thus, we conclude the district court justifiably found A.R.'s prior allegations had not been proven false.

Significantly, McCune presented no evidence that A.R. was mentally unstable, nor did he allege A.R. gave an unusual response when asked what it meant to tell the truth. Additionally, although McCune claimed the State could present no evidence corroborating A.R.'s allegations, at the time of the motion hearing McCune had pled guilty to committing similar acts in Missouri and A.R.'s medical evaluation revealed injuries consistent with her allegations.

Further, it appears the district court concluded A.R. had no significant veracity issues. See *State v. Sellers*, 292 Kan. 346, 356, 253 P.3d 20 (2011) (noting district court's conclusion that evidence showed victim had no veracity problems and pointing out that trial court has benefit of observing victim's demeanor).

Finally, we find McCune's citation to *State v. Bourassa*, 28 Kan. App. 2d 161, 15 P.3d 835 (1999), *rev. denied* 269 Kan. 934 (2000), unpersuasive. There, Bourassa presented evidence the 11-year-old victim had been under psychological care for behavior disorders, had accused her father of sexually molesting her, had tended to soil herself, and reportedly had mutilated two kittens. Further, the victim's sister, who purportedly was present when the abuse occurred, did not testify anything untoward occurred. The Court of Appeals panel concluded a district court abused its discretion in refusing to compel the evaluation of the complaining witness. 28 Kan. App. 2d at 166-67.

The reasons cited by McCune do not rise to the level of evidence presented in *Bourassa*. Rather, his allegations more closely resemble the allegations of defendants in cases in which this court had upheld a trial court's refusal to order an evaluation. See, *e.g.*, *State v. Stafford*, 296 Kan. 25, 40-41, 290 P.3d 562 (2012) (declining to find abuse of discretion when victim failed to disclose abuse in response to broadly asserted questions); *State v. Sprung*, 294 Kan. 300, 316-17, 277 P.3d 1100 (2012) (declining to find abuse of discretion despite evidence victim engaged in dishonest conduct unrelated to accusations charged); *State v. McIntosh*, 274 Kan. 939, 944-46, 58 P.3d 716 (2002) (finding no abuse of discretion when victim experienced behavioral problems, delayed reporting abuse for 2 months, exhibited friendly feelings toward defendant after abuse, inconsistently described the abuse, and State presented no medical evidence corroborating allegations).

Under these circumstances, we conclude the district court did not abuse its discretion in denying McCune's motion to compel a psychiatric evaluation of A.R.

*The prosecutor did not commit misconduct.*

McCune's pro se brief argues the prosecutor committed reversible misconduct in closing argument when he commented, "What else did [Dr. Moffatt] tell you? [A.R.'s] hymenal tissue, her small little 12-year-old vagina had a complete transection and thinning of the walls that is absolutely consistent with blunt force trauma and penetration—'absolutely' consistent with [A.R.'s] explanation of that man raping her." McCune argues this comment misstated the evidence because the thinning was in the hymenal cuff or rim rather than the vaginal walls and because Dr. Moffat never said her findings were "absolutely" consistent with abuse.

In reviewing allegations of prosecutorial misconduct, we first determine whether the challenged comment exceeded the wide latitude of language and manner afforded the prosecutor when discussing the evidence. If we conclude the prosecutor's comment exceeded these bounds, we next determine whether the comment constitutes reversible error. *State v. Brown*, 295 Kan. 181, 210-13, 284 P.3d 977 (2012) (discussing factors used to determine reversibility including the egregiousness of prosecutor's conduct and strength of evidence).

The prosecutor's characterization of Dr. Moffat's observation of thinning in A.R.'s vaginal wall varied slightly from Moffat's testimony that she observed thinning in the "height of [A.R.'s] hymenal cuff or rim." Although the prosecutor misspoke, we do not find this minor inaccuracy to be a misstatement of Dr. Moffat's testimony.

McCune also takes issue with the prosecutor's use of the term "absolutely," arguing Dr. Moffat merely said her findings were "consistent" with A.R.'s description of the abuse. But our review of the record shows that the prosecutor correctly summarized the evidence. At the conclusion of Dr. Moffat's direct examination, the prosecutor showed Dr. Moffat three exhibits depicting the complete transection and the hymenal thinning and asked, "Doctor are your findings in regards to the physical and sexual abuse in your examination consistent with [A.R.'s] disclosure during her forensic interview?" Dr. Moffat replied, "Absolutely." Consequently, we reject McCune's prosecutorial misconduct claim.

*The district court did not err in refusing to strike a detective's testimony that he "believed the victim."*

McCune's pro se brief further argues Detective Rader inappropriately commented on A.R.'s credibility and the district court erred in refusing to strike his statement.

During defense counsel's cross-examination of Detective Rader, she asked, "And I just heard you say you tried to verify the time line of the incidents?" To which Detective Rader responded, "Yes." Defense counsel then asked, "So you were assuming that the incidents indeed happened and you were just trying to figure out when?" Detective Rader responded, "I was trying—I believed [A.R.] and I was trying." Defense counsel then asked the detective to refrain from "those kind of comments," and requested the district court strike Detective Rader's statement that he believed A.R. The court refused the request saying, "You asked if he assumed it was true."

Generally, one witness should not comment on another witness' credibility, and counsel should refrain from asking questions compelling such testimony. See *State v. Crum*, 286 Kan. 145, 151-52, 184 P.3d 222 (2008). But here, McCune's counsel asked a question that essentially invited Detective Rader's response. See *State v. Anthony*, 282 Kan. 201, 215, 145 P.3d 1 (2006) (refusing to consider whether district court erred in admitting K.S.A. 60-455 evidence when defense counsel elicited challenged testimony). Accordingly, we reject McCune's argument.

*We vacate the imposition of lifetime postrelease supervision but reject McCune's remaining arguments regarding his sentences.*

McCune raises four arguments attacking his sentences, but we will not consider the merits of two of those arguments. Specifically, McCune conceded at oral argument that this court previously has rejected the argument that Jessica's Law imposes cruel and unusual punishment. We accept that concession and will not entertain the issue. Similarly, his brief acknowledges that this court has rejected the argument that the district court's use of his prior criminal convictions to enhance his sentences without first requiring that those convictions be proven to a jury violated his right to a jury trial. See, *e.g., State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). Since McCune

asserts no justification for his request that we reconsider this precedent, we decline to do so.

*McCune has not demonstrated Jessica's Law is vague.*

McCune next argues Jessica's Law, K.S.A. 21-4643 is unconstitutionally vague because it is unclear from the statute how his criminal history and prior conviction for statutory rape impacts his second rape conviction.

The State argues the statute uses terms with commonly understood meaning and is not vague.

Both parties agree that a statute is unconstitutionally vague when it fails to give adequate warning as to the proscribed conduct. See *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 173 L. Ed. 2d 650 (2009) (providing a statute is void for vagueness when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited"); *State v. Richardson*, 289 Kan. 118, 124-25, 209 P.3d 696 (2009). But McCune does not complain that the conduct proscribed by K.S.A. 21-4643 is unclear; rather, he complains the sentencing procedure is unclear. McCune's cited standard is meaningless, and he cites no authority indicating sentencing provisions are subject to vagueness challenges.

McCune further fails to identify any words or phrases in the challenged statute that he contends are vague and instead simply asserts the statute's application is unclear. However, a statute is not vague simply because it is unclear or susceptible to multiple interpretations, and we reject McCune's vagueness challenge.

*The district court erred in imposing lifetime postrelease supervision.*

McCune's pro se brief correctly argues that because he was sentenced for an off-grid felony, the district court had no authority to impose lifetime postrelease supervision. See *State v. Conrad*, 297 Kan. 76, 82, 298 P.3d 320 (2013) (vacating lifetime postrelease supervision); *State v. Cash*, 293 Kan. 326, 330-31, 263 P.3d 786 (2011). Accordingly, we vacate the imposition of lifetime postrelease supervision as part of McCune's sentences.

Convictions affirmed and sentences affirmed in part and vacated in part.