NOT DESIGNATED FOR PUBLICATION

No. 119,702

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CORNELIO SALAZAR-MORENO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed April 10, 2020. Affirmed.

*David L. Miller*, of Ney, Adams & Miller, of Wichita, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

POWELL, J.: Following a jury trial, Cornelio Salazar-Moreno was convicted of rape, adultery, and two counts of aggravated indecent liberties with a child. Salazar-Moreno appealed his convictions, and a panel of this court affirmed. Salazar-Moreno then filed a K.S.A. 60-1507 petition alleging ineffective assistance of trial counsel and ineffective assistance of direct appellate counsel. The district court found appellate counsel had been ineffective and ordered a new direct appeal but found Salazar-Moreno's trial counsel not ineffective. Salazar-Moreno appealed the adverse ruling, and a panel of our court affirmed, upholding his convictions of rape and aggravated indecent liberties with a child, but vacating his conviction of adultery.

1

Salazar-Moreno now brings his new direct appeal, raising seven points of error. After a careful review of the record, and for the reasons more fully stated below, we reject Salazar-Moreno's contentions of error and affirm his convictions and sentences.

FACTUAL AND PROCEDURAL BACKGROUND

Salazar-Moreno was initially charged in April 2008, but in October 2010, the State amended the complaint for the third time, charging Salazar-Moreno with one count of rape, two counts of aggravated indecent liberties with a child, and one count of adultery. The charges stemmed from incidents occurring in November and December of 2007. The then 13-year-old victim, D.D., alleged that, in the first incident, Salazar-Moreno fondled her breast over her clothes after taking her to a store to get supplies for a school project. In the second incident, D.D. was in Salazar-Moreno's basement checking her email on the computer when he allegedly fondled her breasts and vagina under her clothes. The third incident occurred on December 30, 2007, when Salazar-Moreno, while on his lunch break, came to the house where D.D. was babysitting and raped her.

Salazar-Moreno was a friend of D.D.'s family. In early 2008, D.D. told one of her friends that Salazar-Moreno took her virginity. In March 2008, another friend learned about the incident and wrote a letter asking D.D.'s mother to call her. When the mother called, the friend told her about Salazar-Moreno having sex with D.D. When D.D.'s mother and father asked D.D. if this was true, D.D. began crying and told them that Salazar-Moreno had come to the house where she was babysitting.

D.D.'s family filed a report with the Hutchinson Police Department. Jane Holzrichter at the child advocacy center interviewed D.D., and Dr. Ellen Losew, a local pediatrician, performed a medical examination of D.D. Both D.D. and her mother provided written statements to the police. The detective investigating the case examined the scene of the alleged rape and investigated D.D.'s allegations. A forensic scientist from

2

the Kansas Bureau of Investigation tested the carpet for signs of blood. The police obtained records from D.D. and Salazar-Moreno's cellphones.

Over two years after he was initially charged, Salazar-Moreno's jury trial began in January 2011. The trial lasted over four days. Dr. Losew testified that the victim had a well-healed cleft or angulation of her hymen, which extended to the vaginal wall. She could not be certain what caused the injury, but D.D.'s report was consistent with the results of her examination which concluded that the injury was suspicious for child sexual abuse.

D.D. testified about the three incidents and described each incident, where it occurred, and what Salazar-Moreno did. D.D. described hearing a phone call between her mother and Dawn Salazar, Salazar-Moreno's wife, where Dawn stated that Salazar-Moreno admitted to having sexual intercourse with D.D.

D.D.'s mother, father, and aunt also testified at trial. Each testified that after they filed the police report, Dawn called D.D.'s mother to check on D.D. The victim's mother put Dawn on speakerphone for everyone to hear. According to their testimony, Dawn said that when she asked Salazar-Moreno about the allegations, he admitted to having sexual intercourse with D.D.

The State called Dawn as a witness. Dawn testified that she told the victim's mother that Salazar-Moreno denied having sex with D.D. Dawn testified that she only called the victim's mother because she was worried about D.D. and wanted to check on her.

Other than Dr. Losew's testimony, there was little physical evidence presented. Salazar-Moreno called the KBI forensic scientist as a witness. The forensic scientist testified that she found no traces of blood on the carpet where D.D. testified she had bled.

3

Salazar-Moreno also called Dawn, who testified similar to her testimony during the State's case-in-chief.

Ultimately, the jury found Salazar-Moreno guilty on all counts. Salazar-Moreno filed several posttrial motions, including a motion for a downward dispositional and durational departure. The district court denied these motions, and specifically, denied the departure motion because it found Salazar-Moreno did not provide evidence of sufficient mitigating circumstances to warrant a departure from a Jessica's Law sentence. Salazar-Moreno was sentenced to three concurrent life prison sentences with a minimum of 25 years for the three Jessica's Law convictions and a concurrent 30-day jail sentence for the adultery conviction.

Salazar-Moreno filed a notice of appeal. On appeal, Salazar-Moreno raised issues regarding Dr. Losew's testimony and the district court's failure to grant a mistrial in several instances. *State v. Salazar-Moreno*, No. 106,555, 2013 WL 5925894, at *2-11 (Kan. App. 2013) (unpublished opinion) (*Salazar-Moreno I*). A panel of this court refused to consider the testimonial issue due to a lack of a contemporaneous objection and found the district court had not abused its discretion in denying any of Salazar-Moreno's motions for a mistrial. *Salazar-Moreno I*, 2013 WL 5925894, at *4, 11. A mandate was filed with the district court on December 10, 2013.

In October 2014, Salazar-Moreno filed a K.S.A. 60-1507 motion alleging ineffective assistance of trial counsel and ineffective assistance of appellate counsel. Following an evidentiary hearing, the district court found Salazar-Moreno's trial attorneys were not ineffective because, while they were deficient, their actions were not prejudicial. But the district court found his appellate counsel's performance had been ineffective and granted him a new direct appeal.

Salazar-Moreno timely appealed the district court's 1507 ruling, arguing he had been denied his counsel of choice and the district court had erred in concluding his trial attorneys were not ineffective. The panel affirmed the district court in most respects but vacated Salazar-Moreno's conviction and sentence for adultery. *Salazar-Moreno v. State*, No. 115,031, 2017 WL 383433, at *9, 14 (Kan. App. 2017) (unpublished opinion) (*Salazar-Moreno II*).

Salazar-Moreno now brings his new direct appeal.

ANALYSIS

On appeal, Salazar-Moreno raises seven arguments: (1) his convictions for rape and adultery are mutually exclusive thus entitling him to a new trial; (2) the district court erred in allowing the admission of testimony falling under the marital privilege and the hearsay rule; (3) the district court erred in allowing Dr. Losew to testify that the injuries to D.D.'s hymen were consistent with D.D.'s claim of rape; (4) the district court abused its discretion in denying his motion for a psychological examination of D.D.; (5) the State committed prosecutorial error in its closing argument; (6) cumulative error denied him a fair trial; and (7) the district court abused its discretion in failing to grant him a downward dispositional and durational departure. We address each argument.

I.     WERE THE CONVICTIONS OF RAPE AND ADULTERY MUTUALLY EXCLUSIVE?

Salazar-Moreno argues his convictions of rape and adultery were legally and factually impossible. Specifically, Salazar-Moreno argues adultery and rape are mutually exclusive crimes in Kansas because adultery is a crime of consent and consent is a defense to rape. As a result, he argues that both convictions should be reversed. The State argues Kansas law does not state that adultery can never include nonconsensual sex and

further contends the rape conviction in this case was based on Salazar-Moreno's sexual intercourse with a minor making consent irrelevant.

*Standard of Review*

Whether convictions are mutually exclusive is a legal question subject to de novo review. *State v. Vargas*, No. 119,741, 2019 WL 5485179, at *3 (Kan. App. 2019) (unpublished opinion).

*Analysis*

"Mutually exclusive verdicts exist when a guilty verdict on one count logically excludes a guilty verdict on another count." *Heard v. State*, 999 So. 2d 992, 1005 (Ala. 2007); see *State v. Williams*, 308 Kan. 1439, 1449, 430 P.3d 448 (2018). "'[L]egally impossible verdicts only occur when "a conviction as to one of the crimes *must* negate an element of the other." (Emphasis added.)'" 308 Kan. at 1449; see also 999 So. 2d at 1004 ("[M]utually exclusive verdicts are the result of two positive findings of fact that cannot logically coexist."); *State v. Mumford*, 364 N.C. 394, 400, 699 S.E.2d 911 (2010) ("Verdicts are mutually exclusive when a verdict 'purports to establish that the [defendant] is guilty of two separate and distinct criminal offenses, the nature of which is such that guilt of one necessarily excludes guilt of the other.'"). This contrasts with inconsistent verdicts which can exist in the instance "'where the elements of the two offenses are identical, a verdict of not guilty on one count is inconsistent with a verdict of guilty on the other count.'" *State v. Beach*, 275 Kan. 603, 616, 67 P.3d 121 (2003). "[C]onsistency in a verdict is not necessary; a verdict, though inconsistent, is not erroneous so long as there is sufficient competent evidence to support it." *State v. Wise*, 237 Kan. 117, 122, 697 P.2d 1295 (1985). Mutually exclusive verdicts are not permissible. *Heard,* 999 So. 2d at 1005.

Salazar-Moreno relies on *State v. Hernandez*, 294 Kan. 200, 273 P.3d 774 (2012), the principal case in Kansas addressing mutually exclusive convictions. In *Hernandez*, the Kansas Supreme Court found that the charge of attempted aggravated indecent liberties with a child could not be a lesser included offense of aggravated indecent liberties with a child because "[i]t is a legal impossibility to both attempt the commission of a crime and complete the commission of the same crime, because the failure to complete the commission of the crime is an element of attempt." 294 Kan. at 204. The Kansas Supreme Court held: "The trial court could not legally enter judgment on either verdict because the jury's finding on the other verdict precludes such judgment." 294 Kan. at 207. The district court abused its discretion in not granting the defendant's motion for a mistrial, and our Supreme Court reversed the defendant's convictions on those two charges. 294 Kan. at 207.

*Williams* is the only published Kansas Supreme Court case to address mutually exclusive verdicts between two separate crimes. Williams was convicted, among other crimes, of aggravated burglary and domestic battery. On appeal, Williams claimed the convictions were mutually exclusive. The Kansas Supreme Court, adopting the elements approach used by other jurisdictions to determine if verdicts were mutually exclusive, held the elements of aggravated burglary and domestic battery did not negate each other because it was legally possible for the defendant to commit and be convicted of both crimes. 308 Kan. at 1449-50.

In *Vargas*, 2019 WL 5485179, another panel of our court addressed mutually exclusive verdicts for multiple convictions under alternatively charged theories. The panel held that because a district court lacks the authority to enter multiple convictions under alternatively charged theories, if the jury convicts the defendant on both alternatively charged theories, the district court must sentence the defendant for only one of the alternate counts. 2019 WL 5485179, at *3. The panel vacated the defendant's second conviction for fleeing or attempting to elude a law enforcement officer for

7

reckless driving and remanded the case to the district court with directions for the district court to enter an amended journal entry that reflected only one conviction. 2019 WL 5485179, at *4.

Salazar-Moreno relies upon *State v. Platz*, 214 Kan. 74, 519 P.2d 1097 (1974), for the proposition that adultery and rape are mutually exclusive crimes. In *Platz*, our Supreme Court held that the crime of forcible rape, which requires the act to be performed without the victim's consent and under conditions where the victim is overcome by force or fear, is mutually exclusive to adultery because adultery is a crime of consenting parties. Our Supreme Court held that adultery cannot be a lesser included offense of forcible rape, because "[p]roof of consent is a complete defense to the charge of forcible rape" and "proof of one necessarily disproves the other." 214 Kan. at 77.

However, unlike in *Platz*, here, Salazar-Moreno was charged and convicted of a version of rape in which a lack of consent is not an element of the crime. K.S.A. 21-3502(a)(2), now codified at K.S.A. 2019 Supp. 21-5503(a)(3), prohibits sexual intercourse with a child under the age of 14, regardless of whether the child consented. Given that consent of the victim was not an available defense to Salazar-Moreno, making the issue of consent irrelevant, his convictions for both rape and adultery in this instance are not mutually exclusive.

We recognize that our holding appears to put us at odds with the panel in *Salazar-Moreno II* which found Salazar-Moreno's trial counsel ineffective for failing to seek dismissal of the adultery charge on the grounds that Salazar-Moreno's convictions for rape and adultery were a legal impossibility. 2017 WL 383433, at *9. But "'it is never too late to "surrender[r] former views to a better considered position.'" *South Dakota v. Wayfair, Inc.*, 585 U.S. ___, ___, 138 S. Ct. 2080, 2100, 201 L. Ed. 2d 403 (2018) (Thomas, J., concurring)." *Baldwin v. United States*, 140 S. Ct. 690 (2020) (denying writ of certiorari) (Thomas, J., dissenting from cert. denial). Moreover, decisions of prior

panels of our court do not bind future panels, *State v. Fahnert*, 54 Kan. App. 2d 45, 56, 396 P.3d 723 (2017), nor does a panel have the authority to overrule another panel. *In re Marriage of Cray*, 254 Kan. 376, 382, 867 P.2d 291 (1994). While panels should afford the opinions of prior panels respect, each panel "must uphold [its] duty to correctly determine the law in each case that comes before [it]." *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012), *rev. denied* 298 Kan. 1208 (2013). While it is a correct statement of the law, generally speaking, that convictions for rape and adultery are both legally impossible and mutually exclusive, for the reasons we have explained, because the particular version of rape Salazar-Moreno was convicted of makes consent irrelevant, his conviction for adultery is not mutually exclusive to his rape conviction. Thus, Salazar-Moreno is not entitled to a new trial.

Alternatively, even if we were to agree that Salazar-Moreno's rape and adultery convictions were somehow mutually exclusive, given the *Salazar-Moreno II* panel's decision to vacate Salazar-Moreno's adultery conviction, a result left undisturbed by our decision, Salazar-Moreno no longer suffers from mutually exclusive convictions as he asked for and received in *Salazar-Moreno II* the remedy he sought. See *State v. Collier*, 263 Kan. 629, Syl. ¶ 3, 952 P.2d 1326 (1998) ("law of the case doctrine" precludes reconsideration of issue); *Walker v. State*, No. 118,171, 2018 WL 5729849, at *3 (Kan. App. 2018) (unpublished opinion) (decision in prior appeal settled "law of the case" and no reconsideration allowed).

II.    DID THE DISTRICT COURT ABUSE ITS DISCRETION BY ALLOWING WITNESSES TO TESTIFY ABOUT DAWN'S PHONE CALL?

For his second issue, Salazar-Moreno argues the district court erred when it permitted four witnesses to testify about a phone call from Dawn to the victim's mother where Dawn allegedly stated that Salazar-Moreno admitted to having sexual intercourse with D.D. Salazar-Moreno makes three points to support his argument: (1) the adultery

exception to marital privilege did not apply because adultery was legally impossible; (2) the marital privilege protects his conversation with his wife because Dawn voluntarily disclosed the communication to third parties; and (3) Dawn's statement was inadmissible hearsay because she was unavailable for cross-examination. The State's principal argument in response is that Salazar-Moreno waived this argument because he did not object at trial. The State also argues the adultery exception to marital privilege applies and Dawn's statement was admissible because she was available for cross-examination.

*Standard of Review*

Review of a district court's decision to admit or exclude evidence involves a multistep analysis. First, an appellate court must determine whether the evidence is relevant. Evidence is relevant if it has any reasonable tendency to prove any material fact. Relevant evidence must be both probative and material. The probative value of evidence is reviewed under an abuse of discretion standard. Materiality is reviewed de novo. Second, an appellate court reviews the district court's conclusion about which rules of evidence apply de novo. Third, the district court's application of the rule is reviewed either de novo or for abuse of discretion, depending on the nature of the rule. *State v. Hilt*, 299 Kan. 176, 188, 322 P.3d 367 (2014). Whether the marital privilege applies is subject to de novo review at step two. See *State v. Collier*, No. 109,529, 2014 WL 7565440, at *4 (Kan. App. 2014) (unpublished opinion). The admission of hearsay evidence is ordinarily reviewed for abuse of discretion. Whether the trial court complied with the specific statutory requirements for admitting evidence is reviewed de novo. *State v. Robinson*, 293 Kan. 1002, 1023, 270 P.3d 1183 (2012). Salazar-Moreno does not argue the trial court did not comply with the requirements for admitting evidence, so our review is for an abuse of discretion.

A district court commits an abuse of discretion when its decision: (1) is one that no reasonable person would have adopted; (2) is based on an error of law; or (3) is based

on an error of fact. The asserting party bears the burden to demonstrate an abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

*Preservation*

"K.S.A. 60-404 provides that no verdict shall be set aside based upon the erroneous admission of evidence unless an objection was 'timely interposed and so stated as to make clear the specific ground of objection.'" *State v. Belone*, 51 Kan. App. 2d 179, 197, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015). We generally will not review "an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right." *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). The failure to preserve evidentiary claims through a contemporaneous and specific objection precludes appellate review. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

Issues not raised before the district court are not preserved for appeal unless "(1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights;" or (3) the district court was right for the wrong reason. *State v. Anderson*, 294 Kan. 450, 464-65, 276 P.3d 200 (2012). Under Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34), the appellant must explain why that issue should be considered for the first time on appeal if the issue was not raised in the district court. See 294 Kan. at 465.

Salazar-Moreno admits he did not object at trial regarding either marital privilege or hearsay. But Salazar-Moreno argues he has overcome any procedural default because the district court found his trial attorneys' performance deficient. To support his argument Salazar-Moreno relies on *Bledsoe v. State*, 283 Kan. 81, 150 P.3d 868 (2007), where the Kansas Supreme Court held:

11

"[A] 60-1507 movant can overcome a procedural default . . . and demonstrate exceptional circumstances by [showing] there was (1) ineffective assistance of trial counsel in failing to object regarding an issue; (2) ineffective assistance of direct appeal counsel in failing to raise the issue; or (3) newly discovered evidence or an unforeseeable change in circumstances or constitutional law." 283 Kan. at 88-89.

We are unpersuaded by Salazar-Moreno's argument for two reasons. First, *Bledsoe*'s first exception applies only when a court finds ineffective assistance of trial counsel. 283 Kan. at 88-89. Here, the district court found Salazar-Moreno's trial attorneys' performance deficient but not prejudicial and, therefore, not ineffective. The *Salazar-Moreno II* panel affirmed this part of the district court's ruling. 2017 WL 383433, at *14. Second, the exceptional circumstances in *Bledsoe* only apply to K.S.A. 60-1507 appeals. See *Bledsoe*, 283 Kan. at 88-89. The district court in Salazar-Moreno's K.S.A. 60-1507 motion did find Salazar-Moreno's appellate counsel ineffective, and as a result, ordered that Salazar-Moreno was entitled to a new *direct* appeal.

Given this appeal is Salazar-Moreno's second direct appeal and not a K.S.A. 60-1507 appeal, he must again follow the procedures of a direct appeal. Salazar-Moreno does not argue one of *Anderson*'s exceptions to the waiver rule applies, and he concedes he did not lodge a contemporaneous objection to the admission of evidence for violating marital privilege or the hearsay rule. Therefore, he has not preserved this issue to allow our consideration of it on the merits.

III.   DID THE DISTRICT COURT ABUSE ITS DISCRETION BY ALLOWING DR. LOSEW TO TESTIFY THE VICTIM'S INJURIES WERE CONSISTENT WITH SEXUAL ABUSE?

For his third issue, Salazar-Moreno argues the district court erred when it allowed Dr. Losew to provide opinion testimony that D.D. was sexually assaulted. Salazar-Moreno argues Dr. Losew's testimony was a backdoor way for Dr. Losew to improperly assert Salazar-Moreno sexually assaulted D.D. and bolster D.D.'s credibility. The State

12

argues Salazar-Moreno failed to properly preserve this issue for appeal. In his reply brief, Salazar-Moreno argues the finding of ineffective assistance of appellate counsel in his K.S.A. 60-1507 motion overcomes any procedural default.

We decline to consider this issue for the reasons we've already articulated above as Salazar-Moreno failed to properly preserve this issue with a proper contemporaneous objection.

IV.    DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING SALAZAR-MORENO'S MOTION FOR A PSYCHOLOGICAL EXAMINATION OF THE VICTIM?

Salazar-Moreno next argues the district court erred in denying his motion for a psychological evaluation of D.D. because D.D.'s recounting of the incidents contained significant inconsistencies. Salazar-Moreno claims there was evidence that D.D. had mental health issues. Additionally, Salazar-Moreno alleges the district court's denial of his motion violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution because it deprived him of his ability to effectively cross-examine D.D. The State argues Salazar-Moreno's motion was a fishing expedition to uncover potential evidence and Salazar-Moreno failed to provide the district court with compelling reasons to order a psychological examination of D.D.

*Standard of Review*

"A district court's decision whether to grant a psychological evaluation of a complaining witness [is reviewed] for abuse of discretion." *State v. McCune*, 299 Kan. 1216, 1230, 330 P.3d 1107 (2014). A district court commits an abuse of discretion when its decision: (1) is one that no reasonable person would have adopted; (2) is based on an error of law; or (3) is based on an error of fact. *Thomas*, 307 Kan. at 739. "When a discretionary decision requires fact-based determinations, a district court abuses its

13

discretion when the decision is based on factual determinations not supported by the evidence." *State v. Gonzalez*, 290 Kan. 747, 757, 234 P.3d 1 (2010). The asserting party bears the burden to demonstrate an abuse of discretion. *Thomas*, 307 Kan. at 739.

Issues pertaining to the Confrontation Clause are reviewed de novo. See *State v. Belone*, 295 Kan. 499, 502-03, 285 P.3d 378 (2012).

*Analysis*

A district judge has the discretion to order a psychological evaluation of the complaining witness in a sex crime case if the defendant shows compelling circumstances to justify that examination. *State v. Berriozabal*, 291 Kan. 568, 580-81, 243 P.3d 352 (2010); *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). Whether the defendant has demonstrated compelling reasons to justify a psychological examination of the victim is viewed under the totality of the circumstances. *McCune*, 299 Kan. at 1231. "Appellate courts are typically loathe to find an abuse of discretion when a district court refuses to order a psychological examination of a young sex abuse victim, unless the circumstances are extraordinary." *State v. Eddy*, 299 Kan. 29, 34, 321 P.3d 12, *cert. denied* 574 U.S. 840 (2014).

A.    *The* Gregg *Factors*

In *Gregg*, 226 Kan. at 490, the Kansas Supreme Court upheld the district court's denial of a motion for a psychological examination because the defendant failed to provide any corroborating facts or evidence to support his motion, and the motion was clearly a fishing exhibition. The Kansas Supreme Court's analysis has developed into the so-named *Gregg* factors, which are:

"'(1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth.' *Berriozabal*, 291 Kan. 568, Syl. ¶ 5." *McCune*, 299 Kan. at 1231.

Though a nonexhaustive list, the parties here do not suggest any other additional factors for us to consider. See *Berriozabal*, 291 Kan. at 581-82.

Salazar-Moreno does not address the first *Gregg* factor in his brief. As with many sexual assault cases, the only witnesses to the alleged incidents were D.D. and Salazar-Moreno. While there was no additional direct evidence, the State was able to provide additional, circumstantial evidence. Two witnesses testified at the preliminary hearing that Dawn called the victim's mother and told her that Salazar-Moreno admitted to having sexual intercourse with D.D. Additionally, Dr. Losew's medical examination of D.D. led her to conclude the injury to D.D.'s hymen was consistent with D.D.'s report. Although no additional direct evidence exists, the existence of circumstantial evidence leads this factor to weigh slightly in the favor of finding the district court did not abuse its discretion.

Salazar-Moreno argues the second factor—whether the complaining witness demonstrates any mental instability—weighs in his favor because Dr. Losew's report documented the victim's 32-pound weight loss and noted depressive symptomatology. Additionally, there was evidence that D.D. received mental health therapy. But Salazar-Moreno did not present any evidence to suggest persons suffering from "depressive symptomatology" are "any less credible than the population at large because of that condition." See *State v. Coggs*, No. 104,934, 2012 WL 5364658, at *3 (Kan. App. 2012)

(unpublished opinion) ("Coggs introduced no evidence to suggest persons suffering from bipolar disorder are any less credible than the population at large because of that condition."). Additionally, Salazar-Moreno did not identify a particular purpose for the counseling or any clinical diagnosis of a recognized mental illness. See *State v. Gay*, No. 107,433, 2013 WL 517828, at *5 (Kan. App. 2013) (unpublished opinion) ("Participation in 'counseling' would not in and of itself suggest grounds for an independent psychological evaluation."). Salazar-Moreno does not support his assertion with any evidence to show how D.D.'s mental health therapy affected her credibility. Accordingly, the second factor weighs in favor of finding the district court did not abuse its discretion.

Addressing the third factor—whether the complaining witness demonstrates a lack of veracity—of the four points Salazar-Moreno makes in his brief, three of them allege D.D. demonstrated a lack of veracity. Salazar-Moreno supports this argument by highlighting the inconsistencies in D.D.'s recounting of the events. While D.D. did have some variation in her description of the events, her various recountings largely remained consistent. D.D. was inconsistent about what Salazar-Moreno wore on December 30 and in what room the sexual intercourse occurred, but she never altered the core of her story that Salazar-Moreno had sex with her. Additionally, there was inconsistency about the exact months the touching occurred. But the inconsistency was whether they occurred in October and November or in November and December. D.D. consistently stated that the first incident occurred in Salazar-Moreno's car and involved him touching her breast over her clothes, and the second incident occurred in Salazar-Moreno's basement and involved him rubbing her breasts and vagina under her clothes.

Salazar-Moreno also asserts D.D. showed a lack of veracity because, when rumors spread in her school about her sexual activity, D.D. and her friends denied that anything occurred. While the rumor at school was not probed at a significant level before the district court, it is not difficult to imagine a middle school girl and her friends not wanting her entire school to find out she had nonconsensual sexual intercourse, especially

16

with a man in his 30s. Trying to stop an embarrassing rumor, true or not, is less evidence of a lack of veracity than of being a typical middle-schooler.

While some details were inconsistent, the inconsistencies do not present a substantial and compelling reason to require a psychological evaluation. See *Berriozabal*, 291 Kan. at 580-81. When the complaining witness' accounts are consistent throughout all the interviews, hearings, and the trial, the defendant generally does not establish a compelling reason. See *State v. McIntosh*, 274 Kan. 939, 946, 58 P.3d 716 (2002). Accordingly, the third factor weighs in favor of finding that the district court did not abuse its discretion.

Salazar-Moreno does not address the fourth factor—whether similar charges by the complaining witness against others have been proven false—and there is nothing in the record to suggest D.D. has ever made any other allegations of sexual abuse. Accordingly, this factor weighs in favor of finding the district court did not abuse its discretion.

Addressing the fifth factor—whether the motion for a psychological examination of the complaining witness appears to be a fishing expedition—the State asserts the motion was vague, factually inaccurate, and amounted to nothing more than a fishing expedition to uncover potential useful evidence. Salazar-Moreno was mainly concerned with D.D.'s veracity and her recounting of the events. This appears to be a veiled challenge to D.D.'s credibility and not evidence of compelling reasons to order an examination. See *State v. Ballou*, No. 116,252, 2017 WL 3575610, at *16 (Kan. App. 2017) (unpublished opinion) (holding argument that victim's varying statements was "a veiled challenge to [the victim's] credibility as a witness and not evidence showing compelling reasons to order a psychological evaluation"), *aff'd* 310 Kan. 591, 448 P.3d 479 (2019). Accordingly, the fifth factor weighs in favor of finding the district court did not abuse its discretion.

Salazar-Moreno does not address the sixth factor—whether the complaining witness provides an unusual response when questioned about her understanding of the truth. In her interview with Holzrichter, D.D. describes the truth as "Tell them what happened." D.D. described telling a lie as "To make up something." When asked at the preliminary hearing if she told the truth, D.D. responded, "Yeah." When asked what she was told about testifying at the preliminary hearing, D.D. said, "Tell the truth." Nothing in D.D.'s responses indicated she did not understand what the truth is. Accordingly, the sixth factor weighs in favor of finding that the district court did not abuse its discretion.

Given that all six *Gregg* factors weigh in favor of finding that the district court did not abuse its discretion, we hold the district court did not err when it denied Salazar-Moreno's motion for a psychological evaluation.

B.      *Right to Confrontation*

Salazar-Moreno also asserts the district court's ruling prejudiced him because it prevented him from effectively cross-examining D.D. The right of a criminal defendant to cross-examination is inherent in the Sixth Amendment's right to confrontation. But that right is not absolute. "In certain circumstances it must 'bow to accommodate other legitimate interests in the criminal trial process.'" *Thomas*, 307 Kan. at 738.

Salazar-Moreno cites two non-Kansas cases to support his argument. Neither case is binding on us, and both cases are distinguishable. In *Gray v. State*, 640 So. 2d 186 (Fla. Dist. Ct. App. 1994), the defendant asked for an expert to conduct a personal interview of a complaining witness but was denied. The Florida Court of Appeals held a failure to allow the defendant to conduct an interview deprived the defendant of fundamental fairness because he could not present a fair defense to the State's case. 640 So. 2d at 192. Here, Salazar-Moreno asked for a more intrusive psychological examination. In *People v. Wheeler*, 151 Ill. 2d 298, 602 N.E.2d 826 (1992), the only way for a defense expert to

testify about the victim's alleged rape trauma syndrome besides an examination was for the defendant to pay an expert to sit and watch the State's expert testify. The State's expert "based her opinion on her own subjective interpretation of the victim's answers to questions and certain nonverbal factors." 151 Ill. 2d at 310. The Illinois Supreme Court held the State presenting testimony of an examining expert about rape trauma syndrome while the defendant was limited to testimony from a nonexamining expert was fundamentally unfair. 151 Ill. 2d at 311. Here, a video of Holzrichter's interview and Dr. Losew's report based on a physical examination were available for the defendant and any expert to analyze.

Salazar-Moreno's motion argued D.D. might not be competent to testify because of the inconsistencies in her various recountings. Defense counsel could, and did, cross-examine D.D. at trial about those inconsistencies. Holzrichter also testified about her interview of D.D., and the video was played before the jury. Dr. Losew testified about the conclusions she reached in her report. The State provided Salazar-Moreno with that evidence, and defense counsel had the opportunity to cross-examine both witnesses. Salazar-Moreno does not point to any additional evidence an intrusive psychological evaluation of D.D. would have provided that would have allowed defense counsel to more effectively cross-examine any of the State's witnesses.

The district court did not abuse its discretion.

V.   DID THE STATE COMMIT PROSECUTORIAL ERROR DURING ITS CLOSING ARGUMENT?

Salazar-Moreno alleges the prosecutor committed three errors in his closing argument. First, the prosecutor offered his personal opinions about D.D.'s credibility when he asked the jury what her motivation would be to make false allegations. Second, the prosecutor attempted to lower the State's burden of proof by suggesting that any

19

doubt a juror might have was not reasonable until discussed with the other jurors. Third, the prosecutor improperly asked the jury to "do its duty." The State responds that: (1) a prosecutor's argument that a witness lacked a motive to be untruthful is not improper vouching; (2) a prosecutor may distinguish between proof beyond a reasonable doubt and proof beyond any doubt in closing arguments; and (3) a prosecutor's exhortation to the jury to "do your duty," when taken in context, is simply a statement referencing the jury's duty to decide the facts.

*Standard of Review*

We employ a two-step process to review prosecutorial error claims: error and prejudice.

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

20

*Analysis*

Prosecutors may draw

"'reasonable inferences from the evidence but may not comment on facts outside the
evidence.' Any argument 'must accurately reflect the evidence, accurately state the law,
and cannot be "intended to inflame the passions or prejudices of the jury or to divert the
jury from its duty to decide the case based on the evidence and the controlling law."'
[Citations omitted.]" *State v. Longoria*, 301 Kan. 489, 524, 343 P.3d 1128 (2015).

When prosecutorial error is alleged, the statements are not taken in isolation but are
viewed in context. See *State v. Anderson*, 308 Kan. 1251, 1261, 427 P.3d 847 (2018).
While a timely objection is not a required precondition for appellate review of a
prosecutor's statements during closing argument, an objection by defense counsel—or
lack thereof—may affect an appellate court's analysis. *State v. Sean*, 306 Kan. 963, 974,
399 P.3d 168 (2017).

Each statement challenged by Salazar-Moreno occurred at a different point of the
prosecutor's closing argument, and each will be addressed in the order in which Salazar-
Moreno raises them.

A.    *D.D.'s motivation to make false allegations*

First, Salazar-Moreno argues the prosecutor committed prosecutorial error when
he made the following remark during his closing argument:

"What possible reasons could there be for inconsistencies? Maybe time. Maybe
it's been two years since the child last testified in the case. Maybe it's because it happened
so long ago. Maybe it's because of natural changes that occur in the brain as to what
happened . . . . Sometimes there are natural reasons for inconsistences. They are caused

21

by stress or perhaps they are caused by an intentional effort not to recall those events; don't think about them. Don't dwell on them. Put it away in the back of your mind until one day you're asked to get on the stand and recall every detail.

"*Use your common sense and experience. One thing you should consider when you're thinking about the testimony of [D.D.], what motivation? What is the motivation for her to make false allegations in the case? Think about that very carefully. What motivation does she have?*" (Emphasis added.)

Salazar-Moreno takes issue with the italicized portion. Defense counsel objected at trial, and the district court overruled the objection.

Generally, prosecutors may not offer their personal opinions to the jury about the credibility of witnesses. Prosecutors may explain what a jury should look for to assess witness credibility, especially when defense counsel has attacked the credibility of the State's witnesses. See *State v. Stone*, 291 Kan. 13, 19, 237 P.3d 1229 (2010). A prosecutor's argument that the victim did not have a motive to be untruthful does not constitute vouching for the witness' credibility. *King*, 288 Kan. at 353.

In *King*, the Kansas Supreme Court found the prosecutor did not commit error when the prosecutor asked the jury, "'Who has the motive to be untruthful? It's not [L.E.]. . . . The evidence [that] has been submitted to you is consistent with what she's told you. The person who has the motive to be untruthful is not [L.E.].'" 288 Kan. at 350. This conclusion was strengthened by the fact that the defense counsel also made statements during closing argument about whether the victim or the defendant had a greater motivation to lie. 288 Kan. at 351.

The Kansas Supreme Court also found no error in *State v. Finley*, 273 Kan. 237, 247, 42 P.3d 723 (2002), when the prosecutor stated: "'Tom and Denise are the only ones that really have a motive to fabricate any lies in this case.'" But the court did find error

when the prosecutor told the jury: "'I just can't buy this story that Tom and Denise [came] up with.'" 273 Kan. at 247. Similarly, no error was found in *State v. Moore*, 274 Kan. 639, 646, 55 P.3d 903 (2002), when the prosecutor told the jury, "[N]othing that you've been told here in the last two days should indicate to you that she's a liar" and "Well, she already paints him as a liar just by that alone."

Here, the prosecutor's statements are similar to those in *King*. The prosecutor rhetorically asked the jury what motivation D.D. had to lie. Additionally, although defense counsel had yet to make his closing argument, the defense presented at trial focused on the inconsistencies in D.D.'s statements. Indeed, defense counsel's first words of his closing argument were "Different story. Different story. Different story." The prosecutor chose to address the inconsistencies in D.D.'s recounting and asked the jury to think what D.D.'s motivation would be to lie. Unlike in *King* or *Moore*, the prosecutor here did not answer his question. The prosecutor did not tell the jury that D.D. was telling them the truth or that Dawn was lying. Instead, after the defense's objection, the prosecutor told the jury that they had to decide if D.D. had a motive to falsify allegations.

The prosecutor's statements do not fall out of the wide latitude granted to prosecutors "to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." See *Sherman*, 305 Kan. at 109. Asking the jury to consider D.D.'s motivations to lie was not error.

B.    *Defining reasonable doubt*

Salazar-Moreno next alleges the prosecutor erred when discussing the difference between reasonable doubt and no doubt with the jury. In his closing, the prosecutor stated,

23

"Ladies and Gentlemen, there's a presumption of innocence that applies to the defendant, to every defendant that walks in the courtroom. The State submits it's been pierced. *You have to be convinced beyond a reasonable doubt. You can have doubt. You can find the defendant guilty with a doubt. The question is you have to decide whether you have a reasonable doubt. If you have a reasonable doubt, you have to find the defendant not guilty. If you have any doubts, you need to discuss them among yourselves to determine whether they are reasonable. And only you can decide that.*" (Emphasis added.)

Salazar-Moreno alleges the italicized portion of the prosecutor's statement improperly told the jurors that doubt could only be reasonable if discussed with the other jurors. Defense counsel did not object to this statement.

Incorrectly defining reasonable doubt or diluting the State's burden of proof is outside of the wide latitude given to prosecutors during closing arguments. *State v. Holt*, 300 Kan. 985, 1002, 336 P.3d 312 (2014). In *State v. Stevenson*, 297 Kan. 49, 53, 298 P.3d 303 (2013), the Kansas Supreme Court held it was permissible for the prosecutor to "draw[] a distinction between the concept of proof beyond a reasonable doubt and proof beyond all doubt, rather than attempting to provide a meaning for 'reasonable doubt.'" See *Sherman*, 305 Kan. at 117. The prosecutor's statements there did not state or imply that the State's burden was less than a reasonable doubt. *Stevenson*, 297 Kan. at 54. Though the statement was not error, the Kansas Supreme Court cautioned that using a Wheel of Fortune analogy to distinguish no doubt and reasonable doubt "scuffed the line of misconduct without actually crossing it" because "only a slight difference in wording would have resulted in error." 297 Kan. at 55. In contrast, our Supreme Court found the use of an analogy of a puzzle with missing pieces was error because the prosecutor did not attempt to distinguish between no doubt and reasonable doubt. *State v. Crawford*, 300 Kan. 740, 755, 334 P.3d 311 (2014).

24

Here, the prosecutor's statements permissibly discussed the difference between doubt and reasonable doubt. Additionally, when taken in context, the prosecutor did not tell the jury that doubt could only be reasonable if discussed with other juror members as Salazar-Moreno alleges. The prosecutor told the jurors that only they can decide if their doubts are reasonable. The prosecutor was asking the jurors to discuss any doubts with other jurors to decide if they have reasonable doubts and ultimately determine guilt. Finally, the prosecutor avoided the potential pitfalls discussed in *Stevenson* by not employing an analogy. Instead, the prosecutor asked the jurors to determine if their doubts were reasonable without defining reasonable doubt for them.

There was no error in the prosecutor's statements about reasonable doubt.

C. "*Do your duty*"

Finally, Salazar-Moreno alleges the prosecutor erred by urging the jurors to "do your duty" in the context of asking the jury to find Salazar-Moreno guilty. In closing his rebuttal argument, the prosecutor told the jury:

> "But you do, as jurors, based on the law, have to determine whether the defendant did have sexual intercourse with a child who was under the age of 14, in Reno County, Kansas on December 30, 2007. Did he lewdly fondle and touch her to arouse his or her sexual desires in December and November? Was he married? Those are the facts you're being asked to decide beyond a reasonable doubt. The intercourse doesn't require it be unwilling or forced at knife point. Screaming and yelling. As the quote says, virginity is neither given willingly or taken. It doesn't matter in this case; sex with a 13-year-old child is against the law. *The State asks you do your duty.*" (Emphasis added.)

Salazar-Moreno takes issue with the italicized portion. Defense counsel did not object to this statement at trial.

The United States Supreme Court has held that an exhortation by the prosecutor for the jury to "'do its job' . . . has no place in the administration of criminal justice" and is an error. *United States v. Young*, 470 U.S. 1, 18, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985). But the Kansas Supreme Court has stated: "A prosecutor is certainly afforded the latitude to ask the jury to look at the evidence . . . and enter a verdict which is consistent with that evidence and which will then be, by definition, consistent with justice." *State v. Nguyen*, 285 Kan. 418, 425, 172 P.3d 1165 (2007).

In his soliloquy to the jury, the prosecutor did not explicitly ask the jury to convict Salazar-Moreno. Instead, the prosecutor discussed the elements of the charges. He told the jury it must decide whether Salazar-Moreno fondled and touched D.D. and whether he was married at the time. Then the prosecutor discussed the fact that rape of a person under the age of 14 does not require unwillingness or force. Then the prosecutor asked the jury to do its duty. The prosecutor's statements were not designed to pressure the jury to find Salazar-Moreno guilty. The prosecutor closed his rebuttal argument by asking the jury to look at the evidence and answer those questions to determine a verdict. Though asking the jury to do its duty walks the line between error and no error, in the context of the prosecutor's statements, it is clear the prosecutor was asking the jury to apply the facts to the law and reach a verdict rather than pressuring the jury to find Salazar-Moreno guilty.

The prosecutor's "do your duty" statement was within the wide latitude provided for closing arguments. There was no error.

VI.     WAS THERE CUMULATIVE ERROR?

Salazar-Moreno argues the cumulative effect of the prosecutorial error and legal errors of the district court deprived him of his right to a fair trial. We review de novo "whether the totality of the circumstances substantially prejudiced a defendant and denied

26

the defendant a fair trial based on cumulative error." *State v. Brown*, 298 Kan. 1040, 1056, 318 P.3d 1005 (2014).

However, there is no cumulative error when the record fails to support the errors raised by the defendant on appeal. *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015). A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez,* 307 Kan. 575, 598, 412 P.3d 968 (2018). As we have found no errors before the district court, we cannot find cumulative error.

VII.    DID THE DISTRICT COURT ABUSE ITS DISCRETION WHEN IT DENIED SALAZAR-MORENO'S MOTION FOR DURATIONAL AND DISPOSITIONAL DOWNWARD DEPARTURES?

Finally, Salazar-Moreno argues the district court erred when it denied his motion for a durational and dispositional downward departure from a Jessica's Law life sentence. Salazar-Moreno argues the district court improperly considered aggravating circumstances when it heard unsworn statements from D.D.'s family before ruling on the departure motion. Salazar-Moreno also asserts the district court committed a legal error when it found that voluntary participation of the victim would never apply in a child sex case and a factual error when it refused to consider that Salazar-Moreno did not use force to commit his crimes. The State responds that the district court may consider the facts of the case and the nature of the crime to decide a departure motion under Jessica's Law. Further, the State argues that a minor victim's participation is not necessarily a mitigating factor.

*Standard of Review*

Jessica's Law requires a defendant who is at least 18 years old and convicted of the statutorily enumerated crime to serve a hard 25 life sentence. K.S.A. 21-4643(a)(1); *State*

27

*v. Powell*, 308 Kan. 895, 902, 425 P.3d 309 (2018). A first time Jessica's Law offender may be sentenced under the Kansas Sentencing Guidelines Act if "the [sentencing] judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 21-4643(d); 308 Kan. at 902.

> "[A] district court's determination as to whether there are substantial and compelling reasons to depart [is reviewed] for abuse of discretion. A district court abuses its discretion when: (1) a ruling is based on an error of law; (2) a ruling is based on an error of fact . . . ; or (3) a ruling is arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the judge." 308 Kan. at 902-03.

Whether a fact in a departure ruling is beyond the district court's authority is a question of law subject to de novo review. See 308 Kan. at 912. The defendant bears the burden to establish an abuse of discretion. *Thomas*, 307 Kan. at 739.

*Analysis*

K.S.A. 21-4643(d) contains a nonexclusive list of mitigating circumstances for the sentencing judge to consider. Jessica's Law does not allow for the weighing of aggravating circumstances against mitigating circumstances to determine if a departure should be granted because, with a 25-year mandatory minimum, "'there is nowhere to go but to a less-intense place.'" *State v. Jolly*, 301 Kan. 313, 321-22, 342 P.3d 935 (2015) (quoting *State v. Spencer*, 291 Kan. 796, 809, 248 P.3d 256 [2011]).

*Jolly* provides the proper framework to consider a Jessica's Law departure motion. First, the district court reviews the mitigating circumstances without weighing them against any aggravating circumstances. Second, the district court considers whether the mitigating circumstances are substantial and compelling reasons to depart from the mandatory sentence. 301 Kan. at 324. Substantial is "'"something that is real, not imagined; something with substance and not ephemeral," while the term "'compelling'

implies that the court is forced, by the facts of a case, to leave the status quo or go beyond what is ordinary.'"'" 301 Kan. at 323. "Finally, if substantial and compelling reasons are found for departure . . . , the district court must state on the record those substantial and compelling reasons." 301 Kan. at 324.

"[M]itigating circumstances do not necessarily equal substantial and compelling reasons." 301 Kan. at 323. The facts of the case are essential for the district court to determine if a departure is proper based on substantial and compelling reasons. The district court "does not sentence in a vacuum. The sentencing judge is to consider information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed, including the manner or way in which an offender carried out the crime." 301 Kan. at 323-24.

In *Powell*, 308 Kan. at 906-08, the Kansas Supreme Court sought to clarify its caselaw, recognizing that its prior decisions in *Jolly* and *State v. McCormick*, 305 Kan. 43, 378 P.3d 543 (2016), had left lower courts confused and led to inconsistent applications. A district court is not required to state its reasons on the record for denying a departure motion, only when granting a departure motion. *Powell*, 308 Kan. at 908-09. While the Kansas Supreme Court acknowledged that it is "laudable" for the district court to state its reasons, "those explanations are voluntary and have injected opportunity for challenge based on our language from *Jolly* and *McCormick*." 308 Kan. at 909.

In *Powell*, the Kansas Supreme Court overruled cases that found abuses of discretion when the record failed to affirmatively demonstrate the district court's application of the *Jolly* framework because those cases were "oddly contrary to how abuse of discretion review is typically performed—namely, the general rule that a party arguing an abuse of discretion bears the burden of proving it." *Powell*, 308 Kan. at 910. The Supreme Court noted that, "in other contexts, a district court's failure to express each step of an applicable legal framework on the record has not required reversal . . . .

29

[N]othing in *Jolly* altered the general principles underlying abuse of discretion review." 308 Kan. at 910-11.

Under *Powell*, "the only question on appeal is whether something in the record shows an abuse occurred." 308 Kan. at 911. Powell presented several arguments and introduced evidence to argue that mitigating circumstances existed to depart from his presumptive Jessica's Law sentence. The district court denied the motion, stating: "'After considering all of the information presented today, the Court cannot find substantial and compelling reasons to depart from the presumed sentence.'" 308 Kan. at 900. The district court did not expressly state that it considered any facts or arguments as aggravating, nor did it state whether it weighed any aggravating circumstances to reach its decision. Powell appealed, arguing the district court failed to determine if mitigating factors existed and included aggravating circumstances and "'inappropriate facts' in its analysis because the court said it 'considered all of the information presented today.'" 308 Kan. at 900. Another panel of this court reversed the district court because it could not definitively determine from the record whether the district court weighed any aggravating circumstances. 308 Kan. at 902. The Kansas Supreme Court granted review to determine whether to reverse the district court "simply because the court did not affirmatively declare that it reviewed Powell's mitigating circumstances without weighing them against aggravating circumstances." 308 Kan. at 901-02. The Kansas Supreme Court noted there was no evidence that the district court engaged in any weighing or that it even considered any information presented to it as aggravating. 308 Kan. at 911. Ultimately, the Kansas Supreme Court held that it was not error for the district court to consider all of the information presented "'today.'" 308 Kan. at 912-13.

Salazar-Moreno claimed several mitigating factors existed, including his lack of criminal history, D.D.'s participation through her repeated phone calls to him, his dedication to his family, his work history, and his family's need for his support. Salazar-Moreno presented several letters and testimony from family and friends supporting him

30

and supporting his mitigating factors. The district court asked the State to respond to Salazar-Moreno's arguments and incorporated the State's sentencing recommendations into the argument. The State argued that all of the testimony the district court heard was only the opinions of Salazar-Moreno's friends and family. The State did not address the actual sentence. Defense counsel responded by asking the district court to note that the State did not propose any aggravating factors.

After hearing both sides, the district court stated, "I was assuming I would rule on the motion for departure first. Because the defendant has presented testimony, I'm going to let any victims address the Court at this time, and then I certainly will hear from the State on its recommendation on sentencing." D.D.'s mother addressed the district court and read letters from D.D. and D.D.'s sister regarding how the experience had affected them. Included in both letters was an allegation that Salazar-Moreno's family threatened D.D.'s family over the allegations. D.D.'s grandparents also submitted a letter to the district court.

The district court took a brief recess to read the letters presented by Salazar-Moreno to support his motion. The district court noted the law required the court to sentence Salazar-Moreno to the mandatory minimum unless the court found substantial and compelling reasons to depart following a review of any mitigating circumstances. The district court went through the statutorily enumerated mitigating circumstances and found only Salazar-Moreno's lack of significant criminal history applied. The district court acknowledged it could consider other mitigating circumstances but found that none presented by Salazar-Moreno were "sufficient [mitigation] for me to vary from the required statutory term." Ultimately, the district court denied the motion and imposed the Jessica's Law sentence for each of the applicable convictions.

Salazar-Moreno asserts the testimony by D.D.'s family constituted aggravating circumstances. By hearing their statements before ruling on his departure motion,

31

Salazar-Moreno argues the district court improperly weighed his mitigating circumstances against the State's aggravating circumstances. We disagree. There is no evidence in the record to show the district court considered the statements of D.D.'s family to be aggravating circumstances or that the district court considered those statements when denying Salazar-Moreno's motion. When the district court explained its reasoning on the record, the district court went through the enumerated factors in K.S.A. 21-4643(d) and Salazar-Moreno's additional arguments. The district court did not mention the State's arguments or D.D.'s family's statements. There is no evidence in the record that the district court relied on circumstances outside of the record or weighed any aggravating circumstances to make its ruling.

Salazar-Moreno also alleges the district court made a factual error because it refused to consider as a mitigating factor the fact that Salazar-Moreno did not use force during the commission of his offense. Salazar-Moreno argues this was an abuse of discretion because evidence supported this factor. But a review of the record reveals that the district court considered this argument. The district court stated it considered the evidence presented by Salazar-Moreno at the sentencing hearing and found there was not sufficient mitigation to depart from the presumptive sentence. That evidence included the violent or nonviolent nature of the crime. Additionally, a district court is not required to state any or all of its reasons for denying a departure motion. *Powell*, 308 Kan. at 908-09. There was no error of fact and, thus, no abuse of discretion.

Salazar-Moreno argues the district court made a legal error when it stated that the voluntary participation of the victim would never apply in the context of a child sex case. Salazar-Moreno relies on *State v. Minor*, 268 Kan. 292, 313, 997 P.2d 648 (2000), and *State v. Sampsel*, 268 Kan. 264, 281, 997 P.2d 664 (2000), to support his argument that participation of a minor is a mitigating circumstance. Although the district court did state that whether a victim is an accomplice would never apply in a crime against a child, immediately preceding that assertion, the district court stated, "The next [possible

mitigating circumstance] is that the victim was an accomplice. There is no evidence to assert that." While the district court did make a legal conclusion about that circumstance's applicability, it first made a factual finding that there was no evidence to support that enumerated mitigating circumstance. Even if the district court had considered that mitigating circumstance as possible, it found no evidence to support it. There is no error of law and no abuse of discretion.

Our remaining consideration is whether no reasonable person would take the district court's view. A life sentence with a mandatory minimum of 25 years' imprisonment for a Jessica's Law conviction is the rule. A departure is the exception. The district court found the mitigating circumstances argued by Salazar-Moreno were not substantial and compelling to justify a departure when considering the facts and nature of the convictions. As a reasonable person could take the district court's view, we find no abuse of discretion by the district court's refusal to grant a departure in this case.

We affirm Salazar-Moreno's convictions and sentences.

Affirmed.