NOT DESIGNATED FOR PUBLICATION

No. 119,791

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES MICHAEL REISINGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed May 28, 2021. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: James Michael Reisinger appeals his conviction and sentence for possession of methamphetamine with intent to distribute, raising nine claims of error: (1) The district court erred in denying his motion to suppress evidence resulting from a stop of his vehicle; (2) the district court erred in admitting his statements regarding his prior involvement in drug dealing; (3) K.S.A. 2020 Supp. 21-5705(e) is unconstitutional; (4) the jury was improperly instructed regarding the statutory presumption of intent to distribute under K.S.A. 2020 Supp. 21-5705(e); (5) the State committed prosecutorial error in closing argument; (6) cumulative error denied him a fair trial; (7) at sentencing,

1

the State failed to establish his 1998 Kansas burglary conviction was a person felony; (8) the use of his criminal history to determine his sentence violated his rights under section 5 of the Kansas Constitution Bill of Rights; and (9) the use of his criminal history to determine his sentence violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. After a thorough review of the record, we find no support for Reisinger's arguments and affirm his conviction and sentence.

FACTS

In January 2016, Officer Charles Cottengim was working with the drug interdiction unit in Lawrence. He was told to head to the interstate and look for a white Lexus. Cottengim saw the vehicle and followed it for a few minutes. Based on the vehicle lingering in the left lane of three lanes on I-70, Cottengim then initiated a traffic stop by turning on his emergency lights. However, the vehicle did not immediately stop. Instead, the vehicle accelerated, reaching over 90 miles per hour and, as Cottengim followed the car, it weaved from the left-most lane to the outer right lane. When the car was in the far right lane, Cottengim saw something thrown from the passenger's window. Cottengim thought the item might be drugs and alerted nearby officers. The driver finally acknowledged Cottengim's prior signal to stop and pulled over. Cottengim identified the driver as Reisinger. Reisinger denied throwing anything from the vehicle, but another officer quickly located the item close to the mile marker Cottengim identified when something was thrown out of the passenger window of the white Lexus—a cellophane-wrapped package containing what appeared to be methamphetamine. There was also loose methamphetamine on the ground near the package, which officers collected. In total, the officers collected 301.47 grams of methamphetamine.

In a postarrest interview after being given his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), Reisinger admitted he had been dealing methamphetamine for about three years. He provided many details about his

involvement in drug dealing, including the people he worked for and sold drugs to. He also explained how he used different cell phones to arrange drug sales and consented to a search of the phones he had on him at the time of his arrest.

The State charged Reisinger with possession of methamphetamine with the intent to distribute. Reisinger moved to suppress the evidence stemming from the stop of his vehicle, arguing Cottengim caused him to linger in the left lane by following too closely to his vehicle. The district court denied Reisinger's motion. The video of the car stop after the emergency lights were turned on, the evidence of the methamphetamine, and the video of Reisinger's postarrest statements were admitted over his objections at trial. The video reflected Reisinger sped away and that something (suspected contraband) was thrown from the vehicle before he responded to the order to stop based on Cottengim's initiation of his emergency lights.

The jury convicted Reisinger of possession of methamphetamine with intent to distribute. The district court sentenced Reisinger to 186 months' imprisonment. Additional facts are set forth as necessary herein.

ANALYSIS

I.     REISINGER'S MOTION TO SUPPRESS WAS PROPERLY DENIED.

Reisinger argues the district court erred in denying his motion to suppress evidence. He asserts Cottengim's actions caused him to remain in the left lane; therefore, Cottengim was not justified in stopping him for lingering in the left lane.

A.      *Standard of Review and Applicable Legal Principles*

When reviewing a district court's ruling on a motion to suppress evidence, the factual underpinnings of the decision "are reviewed for substantial competent evidence and the ultimate legal conclusion is reviewed de novo." *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

Warrantless searches and seizures are presumptively unreasonable, subject to a few specific and well-established exceptions to the warrant requirement under the Fourth Amendment to the United States Constitution. See *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). An officer may briefly stop and detain an individual without a warrant when the officer has reasonable suspicion of criminal activity. To have reasonable suspicion to detain an individual, "[a] police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "The United States Supreme Court has described 'reasonable suspicion' as '"a particularized and objective basis" for suspecting the person stopped of criminal activity.' *Ornelas*, 517 U.S. at [696]. Something more than an unparticularized suspicion or hunch must be articulated. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)." *State v. DeMarco*, 263 Kan. 727, 735, 952 P.2d 1276 (1998).

A routine traffic stop is a warrantless seizure under the Fourth Amendment; therefore, an officer must have reasonable suspicion to initiate the stop. See *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). In evaluating whether reasonable suspicion exists, a court must view the quantity and quality of the information known to the officer under the totality of the circumstances. See *DeMarco*, 263 Kan. at 734. The State bears the burden of proof on a suppression motion, so it must prove the lawfulness of the warrantless seizure. See *State v. Morlock*, 289 Kan. 980, 985, 218 P.3d 801 (2009).

4

However, in *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), the United States Supreme Court held:

> "The language of the Fourth Amendment, of course, cannot sustain respondent's contention. The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ('She seized the purse-snatcher, but he broke out of her grasp.') It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."

The United States Supreme Court reiterated this point in *Brendlin v. California*, 551 U.S. 249, 254, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007), stating: "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."

Finally, our Supreme Court, in *State v. Sharp*, 305 Kan. 1076, 1084-85, 390 P.3d 542 (2017), held: "[A] 'totality of circumstances' standard recognizes that events and conditions giving rise to reasonable suspicion are fluid rather than fixed, and the existence of reasonable suspicion may change once new facts are observed by or become known to law enforcement."

B.      *Discussion*

As a preliminary matter, the State argues Reisinger waived his objection to the admission of the methamphetamine because he did not timely object at trial. Prior to trial, Reisinger moved to suppress the methamphetamine that was thrown from the vehicle, evidence recovered from his person and the vehicle, as well as his statements made after the stop, asserting they were fruits of an unlawful seizure. At trial, he timely renewed his objection to the statements made in the postarrest interview and was granted a standing

5

objection to "include the reasonable suspicion for the stop, the voluntariness of the statements themselves, and everything that was . . . in the written motion." Upon our review of the record we are convinced Reisinger timely preserved his objection and the district court recognized his objection and overruled it, relying on its prior ruling to denying suppression of the evidence obtained upon his arrest. The district court considered Reisinger's objection and determined it was timely.

### *The methamphetamine was not discovered as the result of a seizure.*

Reisinger's substantive argument is flawed because he essentially assumes the methamphetamine was discovered because of Cottengim's decision to initiate a traffic stop. We find it was not. Therefore, we need not consider whether Cottengim's actions contributed to Reisinger's alleged left lane violation.

Before considering whether a search was lawful, a court should consider whether the initial seizure was lawful, as an unlawful seizure may taint the fruits of the subsequent search. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). As a logical corollary, a reviewing court must consider whether a seizure within the meaning of the Fourth Amendment had occurred before deciding whether such seizure was lawful. If there was no seizure, the basis for the officer's actions is irrelevant. In *Hodari D.*, a suspect ran after seeing the officers' vehicle on patrol. One officer exited the vehicle and chased Hodari on foot while the other officer continued driving. During his flight, Hodari threw away what appeared to be a rock he had on his person, which the officer saw and later recovered. The rock was found to be crack cocaine. The Supreme Court held the cocaine was not obtained as the result of a seizure because Hodari was not seized— despite his failure to stop while being pursued—when he discarded it. The Supreme Court explicitly rejected Hodari's contention he was seized when the officer chased after him and Hodari failed to stop. 499 U.S. at 626, 629.

6

Here, Reisinger similarly failed to stop when Cottengim activated his emergency lights. Instead, Reisinger changed lanes, sped up, pulled in front of another vehicle, and threw what Cottengim believed to be drug evidence out the window before eventually pulling over. The suspected drug evidence was later collected and determined to be a package containing methamphetamine. This evidence was discovered apart from the traffic stop, and none of this evidence was discovered on Reisinger's person or in his vehicle. Because the evidence was discarded as Reisinger fled from Cottengim, it was not obtained as the result of a seizure within the meaning of the Fourth Amendment. See *Brendlin*, 551 U.S. at 254; *Hodari D.*, 499 U.S. at 629. Therefore, we need not address the legality of the basis for Cottengim to initiate the traffic stop. Because the evidence was not obtained as the result of a seizure, we affirm the district court's ruling as correct for any reason. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

*Reisinger's motion to suppress his post-*Miranda *statements was properly denied*.

Reisinger argues his post-*Miranda* statements bragging about his drug-related sales and income came after he was improperly stopped and arrested for a traffic offense; thus, they were fruit of the poisonous tree. However, under the totality of the circumstances as discussed above, Reisinger did not immediately acknowledge the officer's attempt to stop him. He instead accelerated, reaching speeds over 90 miles per hour, switched lanes back and forth, and threw a package out the passenger window along the side of the interstate. Reisinger's argument is flawed because at the time of his statements, he had been arrested for discarding the package found along I-70 containing methamphetamine. The package had been field tested and was found to be methamphetamine. At that point, the officers had probable cause to arrest Reisinger for possession of methamphetamine with the intent to distribute. This is a justification separate and apart from the alleged left lane violation. And the methamphetamine, as previously discussed, was not discovered as the result of a seizure. Therefore, the district

court properly determined Reisinger's post-*Miranda* statements were not fruit of the poisonous tree, and the statements were properly admitted at trial. We observe no error.

II.     REISINGER'S STATEMENTS ABOUT PAST DRUG DISTRIBUTION WERE ADMISSIBLE.

Reisinger argues the district court erred in admitting his postarrest interview regarding his prior involvement in drug distribution. He asserts the prejudicial effect of the statements outweighs their probative value; therefore, the district court should not have allowed the State to introduce them under K.S.A. 2020 Supp. 60-455(b).

A.     *Standard of Review and Applicable Legal Principles*

Evidence of other crimes or civil wrongs by a defendant is inadmissible for propensity purposes. See K.S.A. 2020 Supp. 60-455(a). However, if the evidence is relevant to some other material fact, such as the defendant's intent in the instant case, it may be admissible. See K.S.A. 2020 Supp. 60-455(b). Relevant evidence must have "any tendency in reason to prove any material fact." K.S.A. 60-401(b). That is, the evidence must be material and probative. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016). And the probative value of the evidence must outweigh the evidence's prejudicial effect. *State v. McCune*, 299 Kan. 1216, 1227, 330 P.3d 1107 (2014).

We review the district court's relevancy and materiality determinations de novo. The district court's decision regarding the probative value of the evidence versus its prejudicial effect is reviewed for an abuse of discretion. 299 Kan. at 1227. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

B.     *Discussion*

As a threshold matter, the State again argues Reisinger has not properly preserved the issue for appeal. However, we will assume without deciding he properly preserved the issue for appeal, claiming the prejudicial effect of the evidence outweighed its probative value. As the State points out, Reisinger filed a written objection to the State's motion to admit K.S.A. 2020 Supp. 60-455(b) evidence.

Evidence is legally admissible as long as it is used for a permissible purpose under K.S.A. 2020 Supp. 60-455(b) and its prejudicial effect does not outweigh its probative value. The purpose for which the evidence is admitted is also a factual question, albeit one not in dispute here. At trial, it is clear Reisinger and the district court were aware the State intended to use Reisinger's statements to prove he possessed the methamphetamine with the intent to distribute it.

To prove its case, the State needed to show Reisinger intended to distribute the methamphetamine. Reisinger's defense was generally centered on how he did not display the typical hallmarks of a drug dealer. On cross-examination, the officers admitted Reisinger did not have any ledgers or scales in his vehicle. And in his closing argument, Reisinger focused on a lack of intent to distribute. Based on Reisinger's theory of defense, his subjective intent to distribute methamphetamine was the most critical element of the State's case.

Contrary to Reisinger's arguments, as discussed below, the rebuttable presumption of intent under K.S.A. 2020 Supp. 21-5705(e)(2) did not relieve the State of its burden to show he intended to distribute. The jury was explicitly instructed it could reject an inference of intent to distribute based solely on the amount of methamphetamine Reisinger possessed. It heard testimony that drug users typically possess much smaller amounts for personal use. The jury also heard Reisinger's admission to three years of

9

continuous methamphetamine sales—strong circumstantial evidence of his present intent to distribute, given the fact more than 300 grams was recovered.

The evidence was highly probative of the most disputed material fact at trial. Our caselaw recognizes evidence that undercuts a defendant's theory of defense is prejudicial to the defendant. *State v. Mburu*, 51 Kan. App. 2d 266, 276, 346 P.3d 1086 (2015). However, "[t]he law favors the admission of relevant evidence and the exclusion of such evidence is an extraordinary remedy that must be used sparingly." 51 Kan. App. 2d at 273. Here, the district court explicitly instructed the jury:  "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crime charged. It may be considered solely as evidence of the defendant's intent." We presume the jury followed the instructions given by the district court. See *State v. Seba*, 305 Kan. 185, 204, 380 P.3d 209 (2016). Based on the district court's instruction to the jury to consider only Reisinger's admission to past drug dealing as evidence of his intent, the prejudicial effect of the evidence did not outweigh its probative value. Reisinger's claim of error fails.

III.    REISINGER HAS NO CLAIM K.S.A. 2020 SUPP. 21-5705 WAS UNCONSTITUTIONALLY APPLIED AT TRIAL.

Reisinger argued K.S.A. 2020 Supp. 21-5705(e)(2) is unconstitutional before the district court and now before us, claiming it creates a mandatory statutory presumption that directs a verdict in favor of the State. The constitutionality of a statute is a question of law subject to unlimited review. Statutes are presumed constitutional, and we resolve all doubts in favor of a statute's validity. Only a statute that clearly violates the Constitution may be stricken down. *State v. Gonzalez*, 307 Kan. 575, 579-80, 412 P.3d 968 (2018).

Reisinger's argument is unpersuasive because any presumption arising under K.S.A. 2020 Supp. 21-5705(e)(2) was never relied on at trial. K.S.A. 2020 Supp. 21-5705(e)(2) provides in pertinent part: "In any prosecution under this section, there shall be a rebuttable presumption of an intent to distribute if any person possesses . . . 3.5 grams or more of . . . methamphetamine." At no point was the jury instructed it must presume Reisinger intended to distribute methamphetamine based on the amount he possessed. Instead, the jury instruction, based on the language of PIK Crim. 4th 57.022 (2013 Supp.), provided in relevant part:

> "If you find the defendant possessed 3.5 grams or more of methamphetamine, you may infer the defendant possessed with intent to distribute. You may consider the inference along with all the other evidence in the case. You may accept it or reject it in determining whether the State has met the burden of proving the intent of the defendant. This burden never shifts to the defendant."

This instruction did not mandate an unconstitutional evidentiary presumption. Rather, it permitted an inference for the jury to consider and apply to the facts of the case. Given the extent of Reisinger's bragging during his post-*Miranda* statements, the fact he was in possession of more than 300 grams of methamphetamine, and the officers' unrebutted testimony that possession of that much methamphetamine was not for personal use, it was reasonable for the jury to apply the inference Reisinger possessed the methamphetamine with the intent to distribute it.

We decline to consider the constitutionality of K.S.A. 2020 Supp. 21-5705(e)(2) as Reisinger cannot show the statute was unconstitutionally applied to him; therefore, he cannot demonstrate he was prejudiced. We do not render advisory opinions or answer purely academic questions. See *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012).

IV.    THERE WAS NO JURY INSTRUCTION ERROR.

Reisinger argues the district court erred in instructing the jury in accordance with PIK Crim. 4th 57.022 regarding the statutory presumption of intent to distribute based on the quantity of methamphetamine he possessed. His argument on this point is unpersuasive. Reisinger acknowledges he did not object to the instruction at trial; therefore, our review looks for clear error. See K.S.A. 2020 Supp. 22-3414(3).

In examining claims of jury instruction error,

"we follow a three-step process:

'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
(2) considering the merits of the claim to determine whether error occurred below; and
(3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.'

"'[W]hether a party has preserved a jury instruction issue will affect [the appellate] court's reversibility inquiry at the third step.' [Citations omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

At the second step, we consider whether the instruction was legally and factually appropriate. 307 Kan. at 318. Appellate courts use unlimited review to determine whether an instruction was legally appropriate then determine whether there was sufficient evidence to support the instruction, viewed in the light most favorable to the defendant or the requesting party. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). If the challenging party did not object to the jury instruction below, an appellate court applies the clear error standard at the third step and will only reverse if an error occurred and the

12

court is firmly convinced the jury would have reached a different verdict if the instruction error had not occurred. The party claiming the instruction given resulted in clear error has the burden to demonstrate the necessary prejudice. *McLinn*, 307 Kan. at 318.

As stated above, the jury instruction provided, in relevant part:

"If you find the defendant possessed 3.5 grams or more of methamphetamine, you may infer the defendant possessed with intent to distribute. You may consider the inference along with all the other evidence in the case. You may accept it or reject it in determining whether the State has met the burden of proving the intent of the defendant. This burden never shifts to the defendant."

Reisinger asserts this instruction was legally inappropriate because it does not accurately reflect the statutory language of K.S.A. 2020 Supp. 21-5705(e)(2), which provides, in pertinent part: "In any prosecution under this section, there shall be a rebuttable presumption of an intent to distribute if any person possesses . . . 3.5 grams or more of . . . methamphetamine." Reisinger argues the district court improperly instructed the jury because "the instruction states that the burden never shifts to the defendant, whereas the statute indicates that the burden does shift to the defendant."

Reisinger's contention on this point shows precisely why we cannot find the instruction clearly erroneous. He argues the district court's "instruction issues a permissive mandate, as opposed [to] the restrictive mandate of the statute." Based on this reasoning, Reisinger cannot firmly convince us the jury would have reached a different verdict had the instruction not been given. If, as Reisinger contends, a more restrictive instruction is needed to comport with the relevant statutory language, giving such an instruction would only make it more likely the jury would reach the same verdict. He cannot on the one hand argue K.S.A. 2020 Supp. 21-5705(e)(2) unconstitutionally directs a verdict in favor of the State, while also arguing the jury would have acquitted him had

13

the instruction more closely reflected the statutory language. His argument on this point is misplaced.

Moreover, the evidence at trial included Reisinger bragging in his postarrest interview regarding his involvement in drug distribution and testimony from law enforcement officers indicating the amount of methamphetamine Reisinger possessed was consistent with distribution as opposed to personal use. And this testimony was unrebutted. Thus, even without the instruction, the evidence would amply support a reasonable inference by the jury Reisinger possessed the methamphetamine with the intent to distribute. Accordingly, we are not firmly convinced giving a different instruction or, for that matter, not giving an instruction would have made a difference in the jury's verdict.

The district court did not err. Our Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). While jury instructions must accurately reflect the law, nothing requires they be identical to Kansas statutes. Here, the instruction was legally appropriate as the jury needed to be instructed the burden never shifts to the defendant. We observe no clear error in the instruction given.

V.    THE PROSECUTOR'S COMMENTS IN CLOSING ARGUMENT DO NOT CONSTITUTE REVERSIBLE ERROR.

Reisinger argues the State committed prosecutorial error in closing argument. In *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016), our Supreme Court held:

> "Appellate courts will continue to employ a two-step process to evaluate claims of prosecutorial error. These two steps can and should be simply described as error and

prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' *State v. Sprague*, 303 Kan. 418, 430, 362 P.3d 828 (2015)."

When considering whether an error is harmless under *Chapman*, appellate courts must

"consider any and all alleged indicators of prejudice, as argued by the parties, and then determine whether the State has met its burden—*i.e.*, shown that there is no reasonable possibility that the error contributed to the verdict. The focus of the inquiry is on the impact of the error on the verdict. While the strength of the evidence against the defendant may secondarily impact this analysis one way or the other, it must not become the primary focus of the inquiry." *Sherman*, 305 Kan. at 111.

In his closing argument, Reisinger argued the evidence showed he embellished his statements to law enforcement regarding his involvement in drug distribution. He essentially asked the jury not to take his statements in the postarrest interview at face value and suggested he may have exaggerated his involvement in drug trafficking in order to gain leniency. In response, the State argued in its rebuttal:

15

"[T]here was absolutely no evidence that the defendant embellished his story. [Counsel] is trying to say, 'Well, he might have, he could have.' Did you hear any evidence that he embellished his story? The defense could subpoena witnesses.

. . . .

". . . [T]here was no evidence that the defendant embellished his story. The defendant has power to subpoena witnesses and could have presented evidence that the defendant was embellishing his story. Instead, all you have is, what, comments from counsel that maybe he did. You have no evidence before you that he did."

Reisinger objected to the prosecutor's comments, and the district court overruled his objection. However, following the prosecutor's rebuttal argument, the district court instructed the jury: "[D]uring the State's closing argument, there was an objection which I overruled, but I want to emphasize the point that the burden never shifts from the State to prove the defendant guilty beyond a reasonable doubt."

Reisinger argues the prosecutor's comments were legally erroneous as they were an attempt to shift the State's burden of proof. The State asserts the prosecutor's argument was a permissible comment on the evidence, or lack of evidence, supporting the defense's theory of the case. The appropriateness of the prosecutor's comments is a close call.

A prosecutor may not "attempt to shift the burden of proof to the defendant or . . . misstate the legal standard of the burden of proof." *State v. Stone*, 291 Kan. 13, 18, 237 P.3d 1229 (2010). However, merely pointing out a lack of evidence supporting the defense is not burden shifting. Nor is it impermissible for the State to make arguments countering the defendant's arguments regarding the State's evidence. See *State v. Haygood*, 308 Kan. 1387, 1401, 430 P.3d 11 (2018); *State v. Williams*, 299 Kan. 911, 940, 329 P.3d 400 (2014). Even though prosecutors have wide latitude in presenting arguments to the jury, the comments here appear to be near the line between a permissible comment on the evidence and an impermissible suggestion the defense needed to present evidence. In the interest of brevity and clarity, we assume without

16

deciding the prosecutor's comments were erroneous, but any such error was ultimately harmless.

The objected-to comments were made in the middle of the State's rebuttal. Following the comments, the prosecutor referred directly to the evidence that undermined defense counsel's argument. Defense counsel attempted to argue Reisinger embellished his claims regarding his involvement in drug trafficking because Reisinger did not have a nice car, nice clothes, or expensive house; therefore, he could not have made the large sums of money he claimed during the interview. Referring to the video of the interview, the prosecutor responded:

"[T]here is a conversation about how much he's selling it for, how much he's paying. And the defendant says to Detective Hanson, 'I am making them a lot of money. I don't got much to show for it.' Those were his words, ladies and gentlemen. Those are his words. How he spends his money, I don't have to prove that. Nowhere in those elements do I have to prove how much money he made, how he spent it. It's immaterial."

While Reisinger acknowledges "the district court informed the jury that the burden of proof never shifts from the State," he fails to persuasively explain to us how the district court's instruction was insufficient. Without further explanation, he argues the instruction "was inadequate to ameliorate the State's error, as it did nothing to discourage the jury from considering what evidence [Reisinger] failed to produce, instead of determining his intent from the evidence that was produced." We presume the jury followed the district court's instruction. See *Seba*, 305 Kan. at 204. Reisinger has not shown the district court's instruction on this point was erroneous.

Further, the jury could determine Reisinger's intent from the evidence produced at trial. The jury heard testimony that recreational drug users typically possess much smaller amounts of methamphetamine for personal use. The jury also saw the interview video wherein Reisinger provided names of his employers and regular customers and revealed

17

he had their contact information in his cell phones. We find that even if the prosecutor's comments were, in fact, erroneous, they were harmless and there is no reasonable possibility the error contributed to the jury's verdict.

VI.     THERE WAS NO CUMULATIVE ERROR.

Reisinger argues even if none of the errors are individually reversible, he should be granted a new trial based on cumulative error. The test for cumulative error is whether the totality of the circumstances establish the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. In assessing the cumulative effect of errors during the trial, we examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). But a single nonreversible error does not constitute reversible cumulative error. See *State v. Williams*, 299 Kan. 509, 566, 324 P.3d 1078 (2014). Here, Reisinger has identified at most one individually harmless error—the prosecutor's comments in closing argument. We observe no cumulative error.

VII.    REISINGER'S PRIOR KANSAS BURGLARY CONVICTION WAS PROPERLY CLASSIFIED
        AS A PERSON FELONY.

Reisinger argues the district court erred in counting a 1998 Kansas burglary conviction as a person felony, which was listed on the presentence investigation (PSI) report as a "residential burglary." The proper classification of a prior conviction as a person or nonperson offense is a question of law subject to unlimited review. *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016).

Reisinger argues his prior burglary conviction should not have been scored as a person offense because, in order to classify a prior burglary as a person offense, it must

18

be a burglary of a dwelling. See K.S.A. 2020 Supp. 21-6811(d). The PSI does not indicate under which subsection Reisinger was convicted. At the time of his prior conviction, burglary was defined by K.S.A. 21-3715 as follows:

"Burglary is knowingly and without authority entering into or remaining within any:

"(a) Building, manufactured home, mobile home, tent or other structure which is a dwelling, with intent to commit a felony, theft or sexual battery therein;

"(b) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexual battery therein;

"(c) motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexual battery therein.

"Burglary as described in subsection (a) is a severity level 7, person felony. Burglary as described in subsection (b) is a severity level 7, nonperson felony. Burglary as described in subsection (c) is a severity level 9, nonperson felony."

Reisinger argues because the PSI does not indicate whether the conviction occurred under K.S.A. 21-3715(a), which would be a person felony, the State did not meet its burden to prove his criminal history at sentencing by a preponderance of the evidence. However, the State persuasively argues "it is clear from context that the PSI writer simply used residence as a shorthand for dwelling." As the State points out, Kansas statute defines "dwelling" as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home *or residence*." (Emphasis added.) K.S.A. 2020 Supp. 21-5111(k). The plain meanings of "residence" and "dwelling" are synonymous. A "residence" is defined as "[a] house or other fixed abode; a dwelling." Black's Law Dictionary 1565 (11th ed. 2019). A "dwelling-house" is defined as "[t]he house or other structure in which one or more people live; a residence or abode." Black's Law Dictionary 641 (11th ed. 2019).

19

Reisinger's argument is unpersuasive. The district court did not err in scoring his 1998 Kansas burglary conviction as a person felony.

## VIII. THERE WAS NO KANSAS CONSTITUTION VIOLATION.

For the first time on appeal, Reisinger asserts the district court's use of his criminal history to determine his sentence violated his rights under section 5 of the Kansas Constitution Bill of Rights. Whether a defendant's constitutional rights have been violated raises a question of law subject to unlimited review. *State v. Ivory*, 273 Kan. 44, 46, 41 P.3d 781 (2002). Generally, constitutional issues raised for the first time on appeal are not preserved. See *State v. Parry*, 305 Kan. 1189, 1191-92, 390 P.3d 879 (2017).

Reisinger acknowledges he did not raise this issue before the trial court but asserts we should review it for the first time on appeal because (1) it is a pure question of law arising on proven or admitted facts and is finally determinative of the case and (2) consideration of the issue is necessary to serve the ends of justice or prevent the denial of his fundamental rights. See *State v. Jones*, 302 Kan. 111, 117, 351 P.3d 1228 (2015) (noting recognized exceptions for reviewing issues not raised below).

Under the facts of this case, even if we assume an exception might apply, the decision to consider the issue is a prudential one. We have the discretion to decline to consider issues raised for the first time on appeal, and we do so here. See *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). However, we also note Reisinger's substantive argument has been rejected by several other panels of this court. See, e.g., *State v. Albano*, 58 Kan. App. 2d 117, 134, 464 P.3d 332, *rev. granted* 312 Kan. 893 (2020); *State v. Valentine*, No. 119,164, 2019 WL 2306626, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1070 (2019).

20

IX.    THERE WAS NO *APPRENDI* VIOLATION.


Reisinger finally argues the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution when it used his prior convictions to enhance his sentence without proving those convictions to a jury beyond a reasonable doubt, contrary to the United States Supreme Court's guidance in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Reisinger recognizes the Kansas Supreme Court rejected this argument, but he includes the issue to preserve it for federal review. See *Ivory*, 273 Kan. at 46; see also *State v. Raschke*, 289 Kan. 911, 912, 219 P.3d 481 (2009) ("We reject this claim as controlled by . . . [*Ivory*]. It requires no further discussion."). Because there is no indication the Kansas Supreme Court is departing from this position, we are duty bound to follow established precedent. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). The district court correctly determined Reisinger's criminal history to establish his sentence.


Affirmed.